SEALED

**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**BECKLEY GRAND JURY 2018**
**SEPTEMBER 24, 2019 SESSION**



**UNITED STATES OF AMERICA**

**v.**                                       CRIMINAL NO. _5:19-00247_
                                             **18 U.S.C. § 1343**
                                             **18 U.S.C. § 1344**
                                             **18 U.S.C. § 1028A**
**NATALIE P. COCHRAN**                       **18 U.S.C. § 1957**
                                             **18 U.S.C. § 157(2)**
                                             **18 U.S.C. § 152(2)**
                                             **18 U.S.C. § 2(b)**

**I N D I C T M E N T**

The Grand Jury charges:

**Counts One – Eleven**
**(Wire Fraud)**

<u>Introduction</u>

At all times relevant to the Indictment:

1.      From at least June 2017 until approximately August 22, 2019, defendant NATALIE

P. COCHRAN resided in Daniels, Raleigh County, West Virginia, in the Southern District of West

Virginia.  During this period, defendant NATALIE P. COCHRAN and her husband owned and

operated Technology Management Solutions LLC ("TMS") and Tactical Solutions Group LLC

("TSG").

2.     TMS and TSG were West Virginia corporations located in Beckley, Raleigh County, West Virginia.

3.     According to defendant NATALIE P. COCHRAN, TMS was an information technology ("IT") company that provided technical and technology consulting services, and TSG was a wholesale merchant and provider of durable goods.

4.     TMS and TSG were registered federal government contractors, but neither TSG nor TMS ever won a federal government contract.

5.     Defendant NATALIE P. COCHRAN offered various investment opportunities in or through TMS and TSG to her family, friends, and other members of the community.

<u>The Scheme to Defraud</u>

6.     From approximately June 2017 through at least August 22, 2019, defendant NATALIE P. COCHRAN knowingly devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses and representations.   That is, through false representations about her and her companies' qualifications as experienced government contractors, defendant NATALIE P. COCHRAN fraudulently induced numerous people to invest in TMS and TSG, and in phony government contracts purportedly awarded to her, TMS, and TSG.

7.     As a result, defendant NATALIE P. COCHRAN defrauded numerous individuals and financial institutions of more than $2.5 million.

<u>Manner and Means of the Scheme</u>

8.     It was a part of the scheme that defendant NATALIE P. COCHRAN represented TSG and TMS to be successful government contractors.  Defendant NATALIE P. COCHRAN

also specifically represented that TSG was a leading supplier to the United States Department of Defense, national security agencies, federal civilian agencies, prime contractors, and world-wide non-profit organizations.

9.     It was further a part of the scheme that defendant NATALIE P. COCHRAN fraudulently solicited "investments" in fake government contracts supposedly awarded to either TSG or TMS, for goods that defendant NATALIE P. COCHRAN claimed either TSG or TMS were to supply to federal or state government agencies.

10.     It was further a part of the scheme that defendant NATALIE P. COCHRAN falsely represented that TSG and TMS acted as brokers for government contracts and that individuals could "invest" in individual contracts that had been awarded to TSG or TMS.

11.     It was further a part of the scheme that defendant NATALIE P. COCHRAN fraudulently led individual investors to believe that they were providing the capital that TSG and TMS needed to bid on and to fulfill their government contracts and that the investors could expect to receive as a return on investment a percentage of the profits that TSG and TMS would make from their government contract work.

12.     It was further a part of the scheme that defendant NATALIE P. COCHRAN sent text messages to potential investors about upcoming federal and state government contracts and that defendant NATALIE P. COCHRAN supplied existing investors with fake contract numbers that had purportedly been awarded to TSG or TMS.

13.     In fact, however, neither TSG nor TMS were ever awarded any federal government contracts and neither company ever fulfilled or received any payment under any state or federal government contracts.

14.     It was further a part of the scheme that defendant NATALIE P. COCHRAN induced at least eleven people to pay over $2.5 million for the purpose of investing in alleged government contracts purportedly awarded to TSG and TMS. The investors paid TMS and TSG through personal checks, cashier's checks and wire transfers.

15.     It was further a part of the scheme that defendant NATALIE P. COCHRAN failed to invest the investors' money as she had promised. Rather, defendant NATALIE P. COCHRAN transferred some or all of the investors' funds to her personal and business bank accounts and then used the money for purposes other than those she had described to investors.

16.     It was further a part of the scheme that defendant NATALIE P. COCHRAN used later investors' funds to pay earlier investors a partial return on their investment, to lull these earlier investors into thinking that their investments were real and not fraudulent.

17.     It was further a part of the scheme that, beginning in February 2018, defendant NATALIE P. COCHRAN applied for and did receive cash advances from at least three finance companies, falsely representing that TSG was a government contractor and providing bank statements showing deposits of investor funds, which she fraudulently represented to be her business sales.

18.     It was further a part of the scheme that defendant NATALIE P. COCHRAN promised and pledged to the finance companies a portion of TSG's accounts receivables, which in fact consisted of investor funds, to secure the cash advances.

19.     It was further a part of the scheme that defendant NATALIE P. COCHRAN used the cash advances from the finance companies to make lulling payments to investors, to deceive them into believing that their investments were real.

4

20.     It was further part of the scheme that, beginning in December 2018, defendant NATALIE P. COCHRAN applied for and did receive lines of credit and loans from banks, by falsely reporting her businesses' income to secure the loans and lines of credit, the proceeds of which she also used to make lulling payments to investors.

21.     It was further part of the scheme that defendant NATALIE P. COCHRAN opened accounts at City National Bank ("CNB"), Branch Banking & Trust ("BB&T"), JP Morgan Chase Bank, and First Community Bank ("FCB").

22.     CNB, BB&T, JP Morgan Chase Bank and FCB were all FDIC-insured financial institutions.  Furthermore, each of these banks had a branch in or near Beckley, Raleigh County, West Virginia.

23.     It was further a part of the scheme that defendant NATALIE P. COCHRAN made false and fraudulent representations to investors, by wire, about the status of their investments and TMS's and TSG's accounts receivable from the federal and state governments, in order to conceal the true value of their investments and what she had done with the investors' money.

24.     It was further a part of the scheme that defendant NATALIE P. COCHRAN created false and fraudulent excuses for her delay in paying investors their returns on their investments. For example, defendant NATALIE P. COCHRAN falsely and fraudulently represented to investors that she could not make repayments to them because the government had not sent her the payments that were owed to her from her companies' contract work.  Further, defendant NATALIE P. COCHRAN blamed a government shut-down for a delay in receiving payments from the federal government, even though she knew that TSG and TSM were never awarded any federal government contracts.

25.     It was further part of the scheme that defendant NATALIE P. COCHRAN sent investors fake emails about the status of their investments, by forwarding emails that defendant NATALIE P. COCHRAN had purportedly received from federal governmental employees and banking industry employees about her companies' purported government contracts or pending payments from the government contracts.  In fact, defendant NATALIE P. COCHRAN used the government and banking employees' means of identification without lawful authority, to mislead her investors.

26.     It was further a part of the scheme that on or about July 24, 2019, defendant NATALIE P. COCHRAN filed a petition under Chapter 7 of the Bankruptcy Code, seeking bankruptcy protection to stave off creditors; however, she did not list any of the investors as creditors.

27.     It was further a part of the scheme that defendant NATALIE P. COCHRAN thereafter filed a document in her bankruptcy case under penalty of perjury, which contained a material omission. That is, defendant NATALIE P. COCHRAN failed to list her ownership interests in TSG and TMS in response to a question that asked defendant NATALIE P. COCHRAN to state her business interests.  Defendant NATALIE P. COCHRAN also failed to inform the bankruptcy court that she had given a financial statement of her businesses to financial institutions, including Premier Bank and FCB. Defendant NATALIE P. COCHRAN also failed to inform the bankruptcy court that she had paid several debts owed to insiders and given a gift valued at over $600 to an individual before her bankruptcy filing.

6

Wire Transmissions

28.    On or about the dates specified below for each Count, at or near Raleigh County, West Virginia, in the Southern District of West Virginia, and elsewhere, having devised and intended to devise the above-described scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing the scheme, defendant NATALIE P. COCHRAN knowingly transmitted and caused to be transmitted by means of wire and radio communications in interstate commerce the writings, signs, signals, pictures, and sounds described below for each count, each transmission constituting a separate Count.

| Count | Approximate Date | Interstate Transmission |
|---|---|---|
| 1 | May 7, 2018 | Wire transmission of $14,270 from a finance company in New York into TSG's CNB account held in Beckley, West Virginia. |
| 2 | August 10, 2018 | Wire transmission of $15,897 from a finance company in New York into the TSG account at CNB in Beckley, West Virginia. |
| 3 | September 13, 2018 | Wire transmission of $92,109 from Investor A to TSG's BB&T account held in Beckley, West Virginia via Winston-Salem, North Carolina. |
| 4 | September 26, 2018 | Wire transmission of $68,074 from Investor B into TSG's BB&T account held at or near Beckley, West Virginia via Winston-Salem, North Carolina. |
| 5 | October 9, 2018 | Email purportedly from a Federal Reserve employee, regarding TSG's accounts receivable, forwarded to an investor with an aol.com email address and processed through AOL's data servers located in Northern Virginia. |
| 6 | October 18, 2018 | Wire transmission of $511,920 from Investor C into TSG's BB&T account held at or near Beckley, West Virginia via Winston-Salem, North Carolina. |
| 7 | November 8, 2018 | Wire transmission of $68,957 from Investor A into TSG's BB&T account held at or near Beckley, West Virginia via Winston-Salem, North Carolina. |
| 8 | November 9, 2018 | Wire transmission of $5,000 from TSG's BB&T account held at or near Beckley, West Virginia to Investor D via Winston-Salem, North Carolina. |

| Count | Approximate Date | Interstate Transmission |
|---|---|---|
| 9 | January 23, 2019 | Wire transmission of $58,934.00 from Investor E into TSG's Chase account held at or near Beckley, West Virginia via New York City, New York. |
| 10 | March 1, 2019 | Wire transmission of $1,000 from TSG's Chase account held at or near Beckley, West Virginia to Investor B via New York City, New York. |
| 11 | June 11, 2019 | Email purportedly from DFAS Customer Service, claiming that DFAS funds were scheduled to be released to TSG, forwarded to an investor and processed through AOL's data servers located in Northern Virginia. |

All in violation of Title 18, United States Code, Section 1343.

## Count Twelve
### (Bank Fraud)

29.     Paragraphs 1 – 28 are incorporated by reference here.

30.     At all relevant times, Premier Bank was a financial institution as defined by 18 U.S.C. § 20 and insured by the FDIC.

### The Scheme

31.     From in or about December 2018 until on or about April 22, 2019, at or near Beckley, Raleigh County, West Virginia, and within the Southern District of West Virginia and elsewhere, defendant NATALIE P. COCHRAN did knowingly devise and intend to devise a scheme and artifice to defraud and to obtain money, funds, credits and property owned by and under the custody and control of a financial institution, that is, Premier Bank, by means of materially false and fraudulent pretenses, representations, and promises.

### Manner and Means of the Scheme

32.     It was part of the scheme that defendant NATALIE P. COCHRAN knowingly submitted financial statements in support of loan applications to Premier Bank that contained materially false representations, including representations regarding TSG and TMS's value and profits that were untrue.

33.     It was further a part of the scheme that defendant NATALIE P. COCHRAN knowingly presented to Premier Bank documents that were false and misleading in an attempt to induce Premier Bank to extend her and TSG loans or lines of credit.

34.     It was further part of the scheme that in December 2018, defendant NATALIE P. COCHRAN submitted to Premier Bank a loan application in which she and TSG attempted to obtain a $100,000 line of credit.  On the loan application, defendant NATALIE P. COCHRAN

falsely represented that TSG was involved in the government wholesale supply contracting business.  The collateral for this loan was to be the accounts receivable of TSG.

35.     It was further a part of the scheme that defendant NATALIE P. COCHRAN also submitted a false personal financial statement for this December 2018 loan application that falsely listed her and her husband's total assets as $523,343,361, TSG's total assets as $522,091,571 and the net worth of TSG as $934,503,865.

36.     It was further a part of the scheme that defendant NATALIE P. COCHRAN submitted another loan application to Premier Bank for a $250,000 line of credit, and that she included a false 2018 tax return as part of the loan application.

In violation of Title 18, United States Code, Section 1344.

## Count Thirteen
### (Aggravated Identity Theft)

37.     Paragraphs 1 – 28 are incorporated by reference here.

38.     On or about August 28, 2018, at or near Raleigh County, West Virginia, and within the Southern District of West Virginia, and elsewhere, defendant NATALIE P. COCHRAN knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, that is, the name and unique electronic identification address of A.B., a person known to the Grand Jury, during and in relation to a felony violation of 18 U.S.C. 1343, wire fraud, and while knowing that the means of identification belonged to an actual person.

In violation of Title 18, United States Code, Section 1028A.

11

## Count Fourteen
### (Aggravated Identity Theft)

39.     Paragraphs 1 – 28 are incorporated by reference here.

40.     On or about April 12, 2019, at or near Raleigh County, West Virginia, and within the Southern District of West Virginia, and elsewhere, defendant NATALIE P. COCHRAN knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, that is, the name and unique electronic identification address of A.B., a person known to the Grand Jury, during and in relation to a felony violation of 18 U.S.C. 1344, bank fraud, and while knowing that the means of identification belonged to an actual person.

In violation of Title 18, United States Code, Section 1028A.

## **Count Fifteen**
### **(Aggravated Identity Theft)**

41.    Paragraphs 1-28 are incorporated by reference here.

42.    On or about March 19, 2019, at or near Raleigh County, West Virginia, and within the Southern District of West Virginia, and elsewhere, defendant NATALIE P. COCHRAN knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, that is, the name and unique electronic identification address of K.B., a person known to the Grand Jury, during and in relation to a felony violation of 18 U.S.C. 1343, wire fraud, and while knowing that the means of identification belonged to an actual person.

In violation of Title 18, United States Code, Section 1028A.

13

**Count Sixteen**
**(Aggravated Identity Theft)**

43.     Paragraphs 1-28 are incorporated by reference here.

44.     On or about February 1, 2019, at or near Raleigh County, West Virginia, and within the Southern District of West Virginia, and elsewhere, defendant NATALIE P. COCHRAN knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, that is, the name and unique electronic identification address of B.B., a person known to the Grand Jury, during and in relation to a felony violation of 18 U.S.C. 1343, wire fraud, and while knowing that the means of identification belonged to an actual person.

In violation of Title 18, United States Code, Section 1028A.

14

**Count Seventeen**
**(Wire Fraud)**

45.     Paragraphs 1-28 are incorporated by reference here.

<u>The Scheme</u>

46.     From on or about June 19, 2019 until on or about June 26, 2019, at or near Beckley, Raleigh County, West Virginia, and within the Southern District of West Virginia and elsewhere, defendant NATALIE P. COCHRAN knowingly devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of materially fraudulent pretenses and representations.  That is, through false representations about her and companies' qualifications as experienced government contractors, defendant NATALIE P. COCHRAN attempted to sell a portion of TSG— approximately 49 percent of the company —  to a potential buyer, a person known to the Grand Jury.

<u>Manner and Means</u>

47.     It was part of the scheme that defendant NATALIE P. COCHRAN falsely and fraudulently misrepresented to the buyer that TSG was an experienced government contractor.

48.     It was further a part of the scheme that defendant NATALIE P. COCHRAN texted and emailed the potential buyer that she was an experienced government contractor, and that TSG was a valuable company.

49.      It was further a part of the scheme that defendant NATALIE P. COCHRAN agreed to "teach" the potential buyer how to apply for government contracts as a condition of the sale.

50.      It was further a part of the scheme that defendant NATALIE P. COCHRAN provided documents to the potential buyer that were false and misleading, in an attempt to induce

15

the potential buyer into believing TSG was an experienced government contractor and valuable company.

51.     It was further part of the scheme that defendant NATALIE P. COCHRAN emailed the potential buyer a fraudulent 2018 tax return of TSG, which falsely reflected TSG's adjusted gross income. Defendant NATALIE P. COCHRAN sent this tax return in an attempt to sell a 49% ownership stake of TSG, for the price of $4.9 million, with the buyer to pay $50,000 up front and then $1 million a year until the purchase of the 49 percent ownership interest was complete.

52.     As a result, defendant NATALIE P. COCHRAN attempted to defraud an individual of $4.9 million and did in fact defraud the individual of $50,000.

<u>Wire Transmissions</u>

53.     On or about June 20-21, 2019, at or near Beckley, Raleigh County, West Virginia, and in the Southern District of West Virginia, and elsewhere, having devised and intended to devise the above-described scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing the scheme, defendant NATALIE P. COCHRAN knowingly transmitted and caused to be transmitted by means of wire and radio communications in interstate commerce certain writings, signs, signals, pictures, and sounds, that is defendant NATALIE P. COCHRAN sent a text message to the potential buyer about the sale of TSG while the buyer was located in North Carolina.

In violation of Title 18, United States Code, Section 1343.

16

**Counts Eighteen - Twenty-Four**
**(Unlawful Monetary Transactions)**

54.     Paragraphs 1 – 28 are incorporated by reference here.

55.     At all relevant times, Branch Banking & Trust ("BB&T"), City National Bank ("CNB"), First Community Bank ("FCB") and Premier Bank were financial institutions as defined in 31 U.S.C. § 5312(a)(2), which engaged in, and the activities of which affected, interstate commerce.

56.     BB&T, FCB, CNB and Premier Bank were also all FDIC insured banks.

57.     BB&T, FCB and CNB had branches in Beckley, Raleigh County, West Virginia, whereas Premier Bank had a branch in Ronceverte, West Virginia.

58.     On or about the date listed below for each Count, in Beckley, Raleigh County, West Virginia and within the Southern District of West Virginia, and elsewhere, defendant NATALIE P. COCHRAN knowingly engaged in and caused others to engage in a monetary transaction by, through, or to a financial institution, as specified below for each Count, in criminally derived property that was of a value greater than $10,000 and which was derived from specified unlawful activity, that is wire fraud, 18 U.S.C. § 1343.

59.     While engaging in and causing others to engage in the monetary transaction, defendant NATALIE P. COCHRAN knew that the property involved in the monetary transaction was criminally derived.

| Count | Approx. Date | Monetary Transaction |
|-------|--------------|----------------------|
| 18 | May 16, 2018 | Withdrawal of $37,500 from TSG's CNB account held at or near Beckley, West Virginia, to purchase a 1965 Shelby Cobra. |
| 19 | October 9, 2018 | Withdrawal of $31,729.60 in cash from TSG's BB&T account held at or near Beckley, West Virginia. |

| Count | Approx. Date | Monetary Transaction |
|-------|--------------|----------------------|
| 20 | October 19, 2018 | Withdrawal of $11,225.40 from TSG's BB&T account held at or near Beckley, West Virginia, to purchase storage for a truck, a 2006 Denali. |
| 21 | October 21, 2018 | Withdrawal of $14,572.21 from TSG's BB&T account, held at or near Beckley, West Virginia, to purchase earrings. |
| 22 | December 3, 2018 | Withdrawal of $21,904 from TSG's BB&T account, held at or near Beckley, West Virginia, to purchase firearms. |
| 23 | April 11, 2019 | Transferred $20,000 from Premier Bank to an investor known to the Grand Jury, located at or near Beckley, West Virginia. |
| 24 | April 23, 2019 | Withdrawal of $112,000 from TSG's FCB account held at or near Beckley, West Virginia, to transfer for the benefit of an investor. |

All in violation of Title 18, United States Code, Sections 1957 and 2(b).

## Count Twenty-Five
### (Bankruptcy Fraud)

60.     Paragraphs 1 – 28 are incorporated by reference here.

61.     On or about July 24, 2019, defendant NATALIE P. COCHRAN caused to be filed in the United States Bankruptcy Court for the Southern District of West Virginia, in Charleston, West Virginia, a Voluntary Petition for Bankruptcy under Chapter 7 of Title 11 of the United States Code, naming herself as the debtor – not TSG or TMS.

62.     On or about July 24, 2019, in Charleston, Kanawha County, West Virginia, and within the Southern District of West Virginia, and elsewhere, having devised and intending to devise the above-described scheme to defraud and for the purpose of executing and concealing that scheme and attempting so to do, defendant NATALIE P. COCHRAN knowingly filed and caused to be filed a document in her pending Chapter 7 bankruptcy case, a proceeding under Title 11 of the United States Code. That is, defendant NATALIE P. COCHRAN filed and caused to be filed a Statement of Financial Affairs that contained false and fraudulent information.  The false statements and fraudulent information reported by defendant NATALIE P. COCHRAN within her Statement of Financial Affairs are listed below.

63.     In response to question 5 in Part 2, defendant NATALIE P. COCHRAN falsely and fraudulently reported that she received $200,000 in gross salary in calendar year 2018, when in fact she had received much more than $200,000 from TSG and TMS during 2018.

64.     In response to question 7 in Part 3, defendant NATALIE P. COCHRAN falsely and fraudulently reported that she had not made a payment on a debt owed to anyone who was an insider when in fact she made several payments on debts owed to family members within the past year.

19

65.     In response to question 13 in Part 5, defendant NATALIE P. COCHRAN falsely and fraudulently reported that she had not given any gifts with a total value of more than $600 per person in the last two years, when in fact she had given a gift of earrings valued at over $600 to an individual known to the Grand Jury.

66.     Defendant NATALIE P. COCHRAN failed to list any business-related property that she owned or had an interest in and omitted her ownership interests in TSG and TMS when specifically asked by question 27 of Part 11.

67.     Also within her Statement of Financial Affairs, defendant NATALIE P. COCHRAN falsely stated that within the two years before filing bankruptcy she had not given a financial statement to anyone about her business in response to question 28 of Part 11.  In fact, defendant NATALIE P. COCHRAN, then and there well knew, she had given Premier Bank financial statements regarding TSG and TMS when applying for a loan in December 2018 and April 2019.

In violation of Title 18, United States Code, Section 157(2).

20

### Count Twenty-Six
### (False Oath in Bankruptcy Proceeding)

68.     Paragraphs 1 – 28 are incorporated by reference here.

69.     On or about July 24, 2019, defendant NATALIE P. COCHRAN caused to be filed in the United States Bankruptcy Court for the Southern District of West Virginia, in Charleston, West Virginia, a Voluntary Petition for Chapter 7 Bankruptcy under Title 11 of the United States Code, naming herself as the debtor.

70.     On or about August 22, 2019, defendant NATALIE P. COCHRAN appeared as a debtor before the meeting of creditors held in Beckley, Raleigh County, West Virginia in the Southern District of West Virginia.

71.     The purpose of the meeting of creditors was to determine the assets and debts of defendant NATALIE P. COCHRAN, in order to help the Chapter 7 trustee and the bankruptcy court manage the debtor's (defendant NATALIE P. COCHRAN) bankruptcy estate.

72.     It was material to the hearing to determine, among other things, whether defendant NATALIE P. COCHRAN had received more from her businesses than the $200,000 salary she had reported on an earlier filed Statement of Financial Affairs.  It was also material to determine whether defendant NATALIE P. COCHRAN had given any gifts that would be collectively valued over $600 to individuals during the past two years.

73.     On or about August 22, 2019, in Beckley, Raleigh County, West Virginia and within the Southern District of West Virginia, defendant NATALIE P. COCHRAN, while appearing as a Chapter 7 debtor before the Chapter 7 Trustee and then while under oath, did knowingly and fraudulently make a false oath and account about relevant issues during and in relation to her then pending bankruptcy case under Title 11 of the United States Code, concerning

21

the salary that she had received from her businesses and the gifts she had given in the past two years as follows:

> Q: In 2018 it identifies your income as self-employed salary of $200,000.  Is that correct? (p. 47)
>
> A: Correct. (p. 47)
>
> . . . .
>
> Q:  Did you ever receive any money from either of the businesses [TSG and TMS] that I have referenced? (p. 95)
>
> A: Just the salary that I put on the bankruptcy. (p.95)
>
> . . . .
>
> Q: Within two years before you filed for bankruptcy, did you give any gifts with a total value of more than $600 per person? You listed no. (p.129)
>
> A: Uh-huh. (p.129)
>
> Q: Is that correct? (p.129)
>
> A: Because I did not, yes. (p. 129)

74.     The aforesaid statements of defendant NATALIE P. COCHRAN were false, as she then and there well knew and believed that she had received much more than $200,000, in the form of assets and money, from TSG and TMS, and that she had given an individual known to the Grand Jury a gift of jewelry valued over $600.

In violation of Title 18, United States Code, Section 152(2).

## NOTICE OF FORFEITURE

1.      The allegations contained in this Indictment are hereby realleged and incorporated by reference for the purpose of giving notice of forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1)-(2) and 28 U.S.C. § 2461(c).

2.      Notice is hereby given of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c).  Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C).  The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

a.      all property which constitutes or is derived from proceeds of the violations set forth in this bill of information;

b.      all property involved in such violations or traceable to property involved in such violations; and

c.      if, as set forth in 21 U.S.C. § 853(p), any property described in (a) or (b) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant's to the extent of the value of the property described in (a) and (b).

The following property is subject to forfeiture on one or more of the grounds stated above:

a.  A forfeiture money judgment in the amount of at least $1,000,000, such amount constituting of the proceeds of the violations set forth in this bill of information;

b.  a $44,935.01 check for all funds within First Community Bank account ending in 6739 held in the name of Tactical Solutions Group LLC;

c.  a 1965 Shelby Cobra Replica, VIN: AE9BMAAH8H1MT1098, seized during the investigation;

d.  a 2017 Yamaha Motorcycle, VIN: 9C6CE22Y5H00, seized during the investigation;

e.  a 2014 Big TEX Dump Trailer, VIN: 16VDX122XE5068547, seized during the investigation;

f.  a 2017 Yamaha Motorcycle TTR230H, VIN: 9C6CG28Y0H0016654, seized during the investigation;

g.  a 2018 Polaris Model 218VFE92BU, VIN: 3NSVFE92XJF410893, seized during the investigation;

h.  a 6x14 AFG BigT trailer, VIN: 5JTAU1419DA044992, seized during the investigation;

i.  a Yamaha Timberwolf ATV, VIN: 810E-096235, seized during the investigation;

j.  a 2017 Honda Rubicon ATV, VIN:1HFTE4524H4201152, seized during the investigation;

k.  two diamond hoop earrings seized during the investigation;

l.  a Toyota 4Runner, VIN: JTEBU5JR8J5609828;

24

m.   a 2008 Dodge Ram 2500, VIN: 3D7KS28A28G133447, seized during the investigation

n.   a 2014 Sundown Rancher trailer, VIN: 13SKJ2828F1KA9730;

o.   the real property located at 433 4-H Lake Drive, Daniels, West Virginia 25832;

p.   the real property located at 219 N Eisenhower Drive, Beckley, West Virginia 25801; and

q.   the real property located at 210 Parkwood Drive, Beckley, West Virginia  25801.

The Grand Jury finds probable cause to believe that the following property is subject to forfeiture on one or more of the grounds stated above:

a.   the real property located at 433 4-H Lake Drive, Daniels, West Virginia 25832;

b.   the real property located at 219 N Eisenhower Drive, Beckley, West Virginia 25801;

c.   the real property located at 210 Parkwood Drive, Beckley, West Virginia  25801; and

d.   a $44,935.01 check for all funds within First Community Bank account ending in 6739 held in the name of Tactical Solutions Group LLC.

MICHAEL B. STUART
United States Attorney

By: _____

KATHLEEN ROBESON
Assistant United States Attorney