IN THE UNITED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF WEST VIRGINIA, BLUEFIELD DIVISION

BEFORE THE HONORABLE OMAR J. ABOULHOSN, MAGISTRATE JUDGE

---o0o---

UNITED STATES OF AMERICA,

              Plaintiff,

vs.                                No. 5:19-CR-00247

NATALIE P. COCHRAN,

              Defendant.

_____/

---o0o---

<u>TRANSCRIPT FROM AN ELECTRONIC RECORDING</u>

INITIAL APPEARANCE

AND DETENTION HEARING

THURSDAY, SEPTEMBER 26, 2019, 12:00 P.M.

---o0o---

| | |
|---|---|
| For the Government: | UNITED STATES ATTORNEY'S OFFICE<br>Post Office Box 1713<br>Charleston, West Virginia 25326-1713<br>BY:  KATHLEEN ROBESON<br>and  JENNIFER RADA HERRALD<br>Assistant United States Attorneys |
| For the Defendant: | FEDERAL PUBLIC DEFENDER'S OFFICE<br>300 Virginia Street East, Rm 3400<br>Charleston, West Virginia 25301<br>BY:  RHETT H. JOHNSON<br>Assistant Federal Public Defender |
| Transcribed by: | KATHY L. SWINHART, CSR<br>Court-approved Transcriber<br>(304) 528-2244 |

Proceedings recorded by electronic sound recording,
transcript produced by computer-aided transcription.

1

```
 1              BLUEFIELD, WEST VIRGINIA

 2         THURSDAY, SEPTEMBER 26, 2019, 12:00 P.M.

 3                      ---o0o---

 4         THE COURT:  The next matter the Court has on the

 5    docket is an initial appearance in the case of the United

 6    States of America versus Natalie P. Cochran, case No.

 7    5:19-CR-247.

 8         Typically the Court only has defense counsel and the

 9    defendant in the courtroom.  The Court did ask the United

10    States Attorney's office to remain in the courtroom because I

11    wanted to take up an initial matter in this matter.  I know

12    you may need some time to speak with your client, Mr. Johnson,

13    but I wanted to bring this to the parties' attention.

14         Yesterday the Court entered an order in a related

15    matter, a civil matter, in which I recused myself from that

16    case because First Community Bank made an appearance in that

17    civil case, and First Community Bank is on my list of

18    recusal -- on my recusal list.

19         It's my understanding this morning from the agents

20    that effected the arrest of Ms. Cochran this morning that she

21    had made some indication to them that she thought that I had a

22    conflict in this criminal matter.  And I wanted to bring that

23    to the parties' attention and see if anyone has an objection

24    to me participating in this matter for the initial appearance

25    and the arraignment and detention hearing in this matter.
```

2

1          And if you need some time to discuss that with your

2     client, Mr. Johnson, I'll certainly give you that time, but I

3     wanted you to know that that was an issue that we needed to

4     address initially before we went any further.

5          So I'll hear anything that you would like to say.  If

6     you'd like for me to give you the time, I'll be glad to give

7     you that time as well.

8          MR. JOHNSON:  May I have a moment, Your Honor?

9          THE COURT:  Absolutely.

10     (Defendant conferring with her counsel.)

11          MR. JOHNSON:  Thank you.  Ms. Cochran is happy to

12     proceed before Your Honor.

13          THE COURT:  Okay.  So she doesn't perceive there is

14     any conflict?  Because I had a conflict in a related civil

15     matter, clearly I had a conflict there, I don't believe that

16     it translates over to this because this is a criminal matter.

17     So I'll proceed in this case.

18          Now, do you need some time then to confer with your

19     client before we go into the initial appearance?

20          MR. JOHNSON:  No, Your Honor.

21          THE COURT:  All right.  I can excuse the United States

22     at this time.  I wanted you in here just in case we had to

23     discuss any -- anything about the recusal issue.  So the

24     United States is excused at this time.

25          MS. HERRALD:  Thank you, Your Honor.

3

1          THE COURT:  Okay.  All right.  So, Ms. Cochran, if you

2     would please stand for me, ma'am, with your counsel.

3          Ms. Cochran, you've been arrested on an indictment

4     that has been filed against you.  You have the right to remain

5     silent.  You have the right to be represented by a lawyer and

6     the right to be considered for release on bond.

7          Do you understand those rights, ma'am?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  Okay.  It's my understanding that you

10    completed a financial affidavit back in June of this year, and

11    you qualified for court-appointed counsel, and I've appointed

12    Mr. Johnson from the Federal Public Defender's office to

13    represent you.

14         Do you understand that?

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  Okay.  Have you received a copy of the

17    indictment?

18         THE DEFENDANT:  Umm, they showed me a copy of it, yes.

19         THE COURT:  Okay.  Have you had an opportunity to

20    review that at all?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  Okay.  You're not going to be called upon

23    to plead to that today, but I want you to know that anything

24    you say can be used against you.

25         Do you understand that?

4

1          THE DEFENDANT:  I couldn't hear you.  I'm sorry.

2          THE COURT:  I'm sorry.

3          I said you're not going to be called upon to plead to

4    that indictment today, but anything you say could be used

5    against you.  Do you understand that?

6          THE DEFENDANT:  I understand.

7          THE COURT:  Okay.  Could you tell me your full name,

8    please?

9          THE DEFENDANT:  Natalie Paige Cochran.

10         THE COURT:  Thank you, Ms. Cochran.

11         Can you read and write?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  Do you have any physical or mental

14   problems that make it difficult for you to understand and

15   participate in court hearings?

16         THE DEFENDANT:  No, sir.

17         THE COURT:  All right.  You have the right to remain

18   silent today and throughout your case.  You have the right to

19   have your attorney present at all court proceedings.  You have

20   the right to have your attorney present if the police want to

21   question you.  You have the right not to make a statement, but

22   any statement you do make can be used against you.

23         Do you understand all that?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  All right.  This indictment charges you

5

1    with numerous counts.  It charges you with wire fraud in

2    Counts 1 through 11 and Count 17; charges you with bank fraud

3    in Count 12; aggravated identity theft, Counts 13 through 16;

4    unlawful money transactions in Counts 18 through 24;

5    bankruptcy fraud in Count 25; and false oath in a bankruptcy

6    proceeding in Count 26.

7         Okay.  Your next court date is going to be your

8    arraignment date.  That is going to be held this coming

9    Tuesday, October 1st, at 10 o'clock here in Beckley.  At that

10   time, you'll enter a plea of not guilty, and you'll get your

11   judicial assignment and your trial date.

12        Do you understand all that, ma'am?

13        THE DEFENDANT:  Yes, sir.

14        THE COURT:  All right.  The United States has filed a

15   motion for detention in this case asserting that you should

16   be -- you should not be released, that you should be in

17   custody during the pendency -- until your trial date.  We're

18   going to hear that on Tuesday as well.

19        Do you understand that?

20        MR. JOHNSON:  Your Honor, I'd like to be heard on that

21   issue.

22        THE COURT:  Okay.

23        MR. JOHNSON:  As I understand the statute, the United

24   States doesn't automatically get three days.  They -- if they

25   motion for a continuance at the initial appearance, the Court

6

1    may continue it not to exceed three days.

2         So, I mean, as a matter of custom and practice,

3    usually this Court and the other magistrate judges in our

4    district will typically give the United States three days, but

5    it's not required by statute, and I'd ask the Court not to do

6    it in this case.

7         As Your Honor is aware, the government has been

8    looking at Ms. Cochran for months and months now.  They don't

9    need three extra days to prepare.  They know everything they

10   need to know to make whatever case they intend to make that

11   she's a serious risk of obstruction or flight, whichever boxes

12   they check.  They don't need three extra days, and the only

13   purpose that it would serve is to hold her in jail

14   unnecessarily until that time.

15        So I'd ask the Court to schedule it for later this

16   afternoon or tomorrow.

17        THE COURT:  Okay.  The Court is going to note that

18   there are representatives of the United States Attorney's

19   office present in the courtroom, so let me have someone come

20   on back up again.

21        MS. HERRALD:  May I approach, Your Honor?

22        THE COURT:  Thank you.  I appreciate it.

23        You were in the courtroom.  You heard the argument of

24   Mr. Johnson.  Do you think we can get the United States

25   Attorney that is in charge of this matter here in court this

7

1   afternoon?

2          MS. HERRALD:  I can reach out to her and see if she is

3   available.  Given that she is in Charleston at the moment --

4          THE COURT:  Right.

5          MS. HERRALD:  -- she would need at least some lead

6   time to drive.

7          And I am not sure if she has any witnesses who would

8   need to testify in addition to the agents who are present here

9   at the moment.

10          THE COURT:  Okay.  Well, I mean, I can -- I may be

11   able to split the baby in this, for lack of a better word.

12   And that is -- and I haven't talked to my probation office yet

13   to get any of the details on this case, but maybe we can still

14   have the detention hearing next Tuesday, but release her today

15   on some kind of home incarceration or home detention between

16   now and then.

17          What's the United States' position in that regard?

18          MS. HERRALD:  The United States would be opposed to

19   that, Your Honor, primarily for -- and home incarceration

20   requires probation would check the residence, it requires a

21   land line, it requires installation of equipment.  By the time

22   all that could be done, it would probably be time for that

23   hearing on Tuesday.

24          THE COURT:  Let's do this.  Let's take about 10

25   minutes or so, give you an opportunity to contact Ms. Robeson,

8

1    see if she can be here this afternoon and what time she can be

2    here, and I'll come back on the bench in about 10 minutes.  In

3    the meantime, I can talk to my probation office as well.

4            Okay?

5            MS. HERRALD:  I just want to add to that, one of the

6    many reasons that we ask for the three-day continuance is

7    because the probation office also has to do background

8    research that they simply do not have time to do prior to an

9    initial, and that is often essential to a question

10   particularly of risk of flight.

11           THE COURT:  I understand, but I'll talk with my

12   probation department and get information from them.

13           So we'll be in recess for about 10 minutes.  Okay?

14           MS. HERRALD:  Thank you, Your Honor.

15           THE COURT:  Thank you.

16           THE COURT SECURITY OFFICER:  All rise.  This Court is

17   in recess.

18                    (Recess taken at 12:08 p.m.)

19                         ---o0o---

20

21

22

23

24

25

9

```
 1              BLUEFIELD, WEST VIRGINIA

 2         THURSDAY, SEPTEMBER 26, 2019, 3:15 P.M.

 3                   ---o0o---

 4         THE COURT SECURITY OFFICER:  All rise.  This Honorable

 5   Court is again in session.  Please be seated and come to

 6   order.

 7         THE COURT:  All right.  We're back on the record.

 8   This is the matter of the United States versus Natalie

 9   Cochran, 5:19-CR-247.

10         Counsel, note your appearance for the record.

11         MS. ROBESON:  Good afternoon, Your Honor.  Kathleen

12   Robeson representing the United States.

13         THE COURT:  Thank you.

14         MR. JOHNSON:  Rhett Johnson on behalf of Ms. Cochran.

15         THE COURT:  Thank you.

16         When we were previously in court, the government had

17   filed a motion for detention in this matter.  Mr. Johnson had

18   requested that the hearing be held today.  However, the

19   government's requested a three-day continuance.

20         As I read the statute, counsel, I believe -- I mean, I

21   don't read that there is any discretion in the statute from

22   what I understand, that the government's request for a

23   three-day continuance, they have a right to do so, and during

24   that continuance the defendant has to be detained.

25         Mr. Johnson, I'll hear anything you have to say.
```

10

1          MR. JOHNSON:  It says the government -- a continuance

2    on motion from the attorney for the government may not exceed

3    three days.

4          THE COURT:  Sure.

5          MR. JOHNSON:  It doesn't say they're automatically

6    entitled to three days.

7          THE COURT:  Okay.  But then the Court can continue it

8    for up to three days, correct?

9          MR. JOHNSON:  Yes.  And the Court cannot continue it

10   up -- you know, the Court cannot continue it -- I mean, Your

11   Honor is correct that Ms. Cochran has to be detained between

12   the initial and the detention hearing.  But there is no -- the

13   government is not entitled to that three days.  That is just a

14   ceiling, not a floor or not an entitlement.

15         You know, Your Honor threw out a suggestion earlier

16   about placing Ms. Cochran on home confinement pending a

17   detention hearing, and -- to which the government objected.

18   What the Court could do is begin the detention hearing now,

19   continue it until sometime next week and release her pending

20   the continuation of the detention hearing.  That -- that would

21   be in keeping with the statute.

22         THE COURT:  It says during the continuance, such

23   person shall be detained.  I don't know that it does keep with

24   the statute.

25         MR. JOHNSON:  But we can start the detention hearing

11

1   now.

2          THE COURT:  That's right.

3          MR. JOHNSON:  So then we've already started.  So we're

4   past the period between the initial appearance and the

5   detention hearing.

6          THE COURT:  Well, I don't know that I read the statute

7   to say -- well, let me hear from the government on this.

8          MS. ROBESON:  The government reads the statute like

9   Your Honor does.  We believe that the language under the

10  statute is clear, that upon any motion from the government for

11  the hearing, that the person does need to be detained in the

12  interim.  However, as a courtesy to the Court, I'm prepared to

13  begin the hearing now if Your Honor would like.

14         THE COURT:  That's fine.

15         Do you have witnesses to call?

16         MS. ROBESON:  Your Honor, my main Secret Service agent

17  and my case agent are both not here, so I could call Agent

18  Fleming to testify if you'd like or I'm prepared to proffer

19  going forward.

20         THE COURT:  Okay.  I'll hear whatever you have to say

21  at this time, if you want to begin.

22         MS. ROBESON:  Yes, Your Honor.

23         Your Honor, the government presents that Mrs. Cochran

24  is a serious flight risk under the statute.  The indictment

25  alleges a theft of a large amount, around two and a half

12

1    million dollars.  We've only accounted for about half a

2    million dollars.  There were many cash withdrawals that are

3    simply not accounted for.

4          Also, there is evidence that Ms. Cochran has

5    previously tried to leave the area.  She sent a text to

6    someone in June of this year voicing how she wanted to move.

7    She also put her house up for sale in July.

8          And we believe that Ms. Cochran has attempted to

9    obstruct justice multiple times in her bankruptcy proceeding.

10    As we charged in the indictment, we believe that she told the

11    bankruptcy court numerous lies.  And she also, we believe,

12    lied to the bankruptcy court about things that are not charged

13    that pertain directly to this investigation, specifically

14    about seizures in this case she presented happened, and I

15    believe there is evidence to show assets that did not actually

16    happen, Your Honor.

17          THE COURT:  Thank you.

18          Mr. Johnson?

19          MR. JOHNSON:  Your Honor, if that is the sum of the

20    government's case, I would submit that they haven't carried

21    their burden that she presents a serious flight risk.  We

22    didn't hear what those text messages are.

23          If Ms. Cochran wanted to move, it's hard to blame her

24    given the press she's received in the small town she lives in.

25    Wanting to move and relocate for the betterment of your

13

1    family, particularly your 12-year-old and 14-year-old children

2    who are being harassed at school over the allegations that are

3    leaked or presented in the paper, that doesn't make you an

4    international flight risk, Your Honor.

5              THE COURT:  I understand there is a difference between

6    trying to make a decision to move versus attempting to flee.

7              MR. JOHNSON:  Right, Your Honor.

8              And wanting to sell her house, Ms. Cochran is broke.

9    She filed bankruptcy because she has no money.  She's trying

10   to, you know, get her life back together in the wake of her

11   husband's death and do right by her family.  The government is

12   conflating all that and making it seem like she's some

13   mastermind flight risk.

14             She has significant medical conditions, two young

15   children.  She's lived in this area pretty much her whole life

16   except for a brief period of time when she was in school and

17   then moved to Tennessee for about a year after school.  I

18   mean, the idea that she is a flight risk is particularly

19   absurd, Your Honor.  And the government cannot just stand here

20   and proffer that and make it so.

21             So I submit the government has not carried their

22   burden.  There is not a rebuttable presumption in this case.

23   It doesn't even meet one of the enumerated things in the

24   statute that have to go down here to say she's a serious

25   flight risk or risk of obstruction.  And, Your Honor, they

14

1    just haven't put on a serious enough case for this Court to

2    make that finding.

3           There certainly are conditions that would assure

4    Ms. Cochran's appearance.  The Court could place her on home

5    confinement even though I submit that that is excessive in

6    this case.  I mean, Ms. Cochran is -- you know, for lack of a

7    better term, Your Honor, she's a soccer mom.  She's just

8    trying to get her kids to and from school, their

9    extracurricular activities, maintain a low profile as best she

10   can.  She enrolled them in school in Greenbrier County

11   starting this year, ah, to keep them away from all the hubbub

12   surrounding her case in Raleigh County.

13          She's just trying to do what is right at this point.

14   That doesn't make her a flight risk.  And I haven't heard

15   anything alleging that she's a danger, but it certainly

16   doesn't make her a danger, Your Honor.

17          As far as any serious risk she would obstruct justice,

18   the government's relying on things she said in open court.  I

19   mean, I don't know the ins and outs of that, but there is a

20   difference between making a mistake and, you know, obstructing

21   justice.  It's -- there is no suggestion that she has

22   intimidated any witnesses or tried to influence anybody's

23   testimony or anything like that that we would think, you know,

24   would be a risk that would compromise the integrity of this

25   case.

15

1          As far as her candidacy for release, you know, she

2    presents a very low risk for reoffending or fleeing.  She is

3    educated.  She worked as a pharmacist, ah, from -- upon her

4    graduation from WVU in 2005 all the way up to 2013, so she has

5    a strong employment history, Your Honor.

6          Significant family and social ties to this area.  Her

7    father is here today and has agreed to serve as the third

8    party custodian.  I mean, I can go on and on.

9          I know the probation office did a pretrial service

10   interview, and Your Honor has some information about

11   Ms. Cochran's profile and --

12         THE COURT:  That is part of the problem that I have

13   today, counsel, is that even if I agreed with you, I don't

14   think there are conditions or set of conditions today that

15   would allow me to release her because I don't have a land line

16   phone to be able to set up home detention that the Court would

17   require if I did release her.

18         And your characterization of her as a soccer mom, when

19   I read the indictment in this case, it sounds a bit more

20   sophisticated to me than a soccer mom as far as the

21   allegations of fraud in this case.  So, you know, I am

22   concerned about that.

23         But I do think the government does have a difficult

24   burden in establishing that she is a danger to the community

25   or to others and that she is a flight risk.  I mean, I think

16

1    that is where the -- the real burden that the government has

2    right now.  I think you've made a great argument as to what

3    the government's burden is at this point.  I don't know if

4    they've sustained it in this early stage of involvement, so

5    I'm not disagreeing with you, I'm agreeing with you.  But I do

6    think this is a more sophisticated defendant from what I read

7    in here.

8         And I realize it's just allegations, but to call her a

9    soccer mom, when I read this, it's kind of hard for me to

10   juxtapose those two positions.  But as I stand here right now,

11   as I see her right now, I think there are conditions or a set

12   of conditions I could release her on, but I don't think those

13   conditions exist today.

14        MR. JOHNSON:  Well, Your Honor, Ms. Cochran's father

15   could move with all deliberate speed to get Frontier to hook

16   up a land line --

17        THE COURT:  But that's not going to be done today.

18        MR. JOHNSON:  Not at this late hour.

19        THE COURT:  Exactly.

20        MR. JOHNSON:  I mean, we could have -- well, Your

21   Honor is correct, not at this late hour but perhaps done

22   tomorrow.  I mean, Your Honor could hold her in detention

23   until the land line phone is set up.

24        THE COURT:  Well, we'll discuss that.

25        I want to hear from the government in response to your

17

1    argument.

2         Counsel, my concern is on the government's position.

3    I understand this is a -- it is a major indictment.  It is

4    pretty thick, it's one of the more thicker indictments I get.

5    It's very detailed, and it shows a very -- I mean, the

6    allegations are very serious in this indictment, so I

7    understand that.  But that doesn't seal the day for the

8    government.  The government has to show that she is a danger

9    to herself or others, or that there are no conditions or set

10   of conditions that would assure her appearance at trial.

11        And what I don't understand from the government's

12   position is, with GPS home confine -- home detention, not just

13   home confinement, home detention with a land line phone, why

14   couldn't that secure her -- I think the concern is flight,

15   isn't it?  Where is -- I don't see anything in the

16   government's motion or heard anything from the government that

17   suggests she's a danger to others or the community.

18        MS. ROBESON:  Yes, Your Honor, it is flight.

19        And I'm sorry, Your Honor, I neglected to mention

20   earlier that we believe she does have access to a private

21   plane if that carries the day.  But I'm prepared to agree to

22   home detention if she can be confined until that land line is

23   set up.  That's fine with the government.

24        THE COURT:  That kind of settles that issue.

25        So here's what I'm going to do.  I think -- I don't

18

1    think you can get a land line phone done in the next 24 hours

2    is my guess.  So I'm going to -- I'm going to grant her a

3    bond, but I'm not going to grant it today.  It won't be

4    effective today.  But she has to pick where she's going to

5    live at.  For my probation staff, they indicated it was either

6    at her house or at her father's home.  Someone needs to pick a

7    place and tell me now which one it is.

8         MR. JOHNSON:  She would prefer, for the interest of

9    her children, to stay in the home that she lives in now.

10        THE COURT:  I know what she prefers.  I'm going to put

11   her in the third party custodian of her father, so she has to

12   be where her father is going to be.  Is her father going to

13   move into her home?

14        MR. JOHNSON:  He's agreed to stay with her should the

15   Court require such and make him a third party custodian.

16        THE COURT:  Okay.  So I'm going to have to have the

17   home inspected by the probation department.  I'm going to

18   require that there be a land line phone.  She's going to be on

19   home detention.  There will be other conditions, I don't have

20   those in front of me, and I'm not going to do the bond today.

21   So what I think we ought to do -- I'm not in tomorrow, so I

22   think we're going to have to come back on Monday.  But Monday

23   I'm in Charleston -- what time are we in Charleston on Monday,

24   1 o'clock?

25             So I could do -- I could be in Beckley on Monday

19

1    morning to where we could do a hearing on Monday morning in

2    Beckley, and then I can proceed on to Charleston.

3              What's your schedule like, counsel?

4              MR. JOHNSON:  I'm turning on my phone, Your Honor,

5    real quick.

6              THE COURT:  Okay.

7              MS. ROBESON:  I can be available Monday morning, Your

8    Honor.

9              THE COURT:  Okay.  And if she doesn't have a land line

10   phone in by Monday morning, then she'll be detained until the

11   land line phone is in.  But I'll have all the paperwork for

12   the conditions of home confinement, home detention.

13             MR. JOHNSON:  Your Honor, I renew my request that she

14   be released pending getting a land line set up.  We do have

15   GPS technology that we seldom utilize.

16             THE COURT:  Well, I utilize it all the time but I

17   don't know that that GPS signal for my probation staff is very

18   strong in that area, so I'm not too certain that we can get

19   that done.  So that is why I'm saying we'll come back on

20   Monday to hopefully have it all set up and ready to go.

21             MR. JOHNSON:  I'm available any time on Monday, Your

22   Honor.

23             THE COURT:  Okay.  So let's do 10 o'clock in the

24   morning in Beckley.

25             And by that time, the probation department will have

20

1    an opportunity to inspect the home?

2            THE PROBATION OFFICER:  [Unintelligible].

3            THE COURT:  Okay.  And be prepared to have her set up

4    on that.

5            And while you're doing it, check and see if the GPS

6    signal is strong enough to be able to do GPS at that location

7    if the land line is not in by that time.

8            THE PROBATION OFFICER:  Yes, Your Honor.

9            THE COURT:  Okay.  So I'll continue this matter until

10   Monday.  The Court is going to remand her to the custody of

11   the United States Marshal Service until Monday morning at 10

12   o'clock.  She'll be brought to Beckley, and we will proceed

13   from there.

14           Is there anything further to take care of at this

15   time?

16           MS. ROBESON:  No, Your Honor, not from the government.

17           MR. JOHNSON:  No, Your Honor.

18           THE COURT:  Okay.  Thank you.  She'll be remanded to

19   the custody of the United States Marshal Service.  We'll be in

20   recess.

21           THE COURT SECURITY OFFICER:  All rise.  Court is

22   adjourned.

23               (Proceedings were adjourned at 3:32 p.m.)

24                           ---o0o---

25

1    CERTIFICATION:

2            I, Kathy L. Swinhart, CSR, court-approved transcriber,

3    certify that the foregoing is a correct transcription from the

4    official electronic sound recording of the proceedings in the

5    above-entitled matter on September 26, 2019.

6

7

8    December 3, 2019_____
     DATE

9

10   /s/ Kathy L. Swinhart_____
     KATHY L. SWINHART, CSR

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25