IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

_____x
                              :
UNITED STATES OF AMERICA,     :    Criminal Action
                              :
            Plaintiff,        :    No.  5:19-cr-00247
                              :
v.                            :
                              :    Date:  September 21, 2020
NATALIE P. COCHRAN,           :
                              :
            Defendant.        :
_____x


TRANSCRIPT OF VIDEO PLEA HEARING HELD
BEFORE THE HONORABLE FRANK W. VOLK, JUDGE
UNITED STATES DISTRICT COURT
IN BECKLEY, WEST VIRGINIA

APPEARANCES:

For the Government:          AUSA KATHLEEN ROBESON
                             United States Attorney's Office
                             P. O. Box 1713
                             Charleston, WV 25326-1713


For the Defendant:           AFPD RHETT H. JOHNSON
                             Federal Public Defender's Office
                             Room 3400
                             300 Virginia Street East
                             Charleston, WV 25301


Probation Officer:           Jeff Gwinn


Court Reporter:              Ayme Cochran, RMR, CRR

Proceedings recorded by mechanical stenography;
transcript produced by computer.

1          PROCEEDINGS had before The Honorable Frank W. Volk,

2    Judge, United States District Court, Southern District of

3    West Virginia, in Beckley, West Virginia, on September 21,

4    2020, at 11:07 a.m., as follows:

5          THE COURT:  Good morning.  Counsel, we're ready to

6    go forward in the case of Natalie Cochran.  If counsel will

7    please note their appearances for the record.

8          MS. ROBESON:  Good morning, Your Honor.  Kathleen

9    Robeson representing the United States.

10         MR. JOHNSON:  Good morning, Your Honor.  Rhett

11   Johnson on behalf of Ms. Cochran.

12         THE COURT:  Mr. Johnson, I am having a lot of

13   trouble making out your voice clearly.

14         MR. JOHNSON:  Your Honor, there is one issue.

15   Since we're in the same room, we can't have both of our mics

16   and speakers on, so I'm having to communicate through the

17   computer set up for Ms. Cochran, but I will try to speak as

18   loudly as I can.

19         THE COURT:  Thank you very much.

20       And so your client is present, as well?

21         MR. JOHNSON:  She is here with me, yes, Your

22   Honor.

23         THE COURT:  Thank you very much.

24       Mr. Johnson, it is my understanding that your client

25   desires to plead guilty to the charges contained in Counts 6

```
 1    and 18 of the indictment; is that correct?

 2                MR. JOHNSON:  It is, Your Honor.

 3                THE COURT:  I'll ask the clerk to please

 4    administer the oath.

 5                COURTROOM DEPUTY CLERK:  Please raise your right

 6    hand.

 7              NATALIE P. COCHRAN, DEFENDANT, SWORN

 8                THE COURT:  Could you please repeat that answer?

 9                THE DEFENDANT:  Yes, I do.

10                THE COURT:  Thank you.

11         Now, Ms. Cochran, you are under oath now, and I'm sure

12    you know that if you answer any of my questions falsely,

13    those answers might later be used against you in another

14    prosecution for perjury or for making a false statement.

15         Now, during the course of this hearing, I'm going to be

16    asking you a number of questions.  At any point, if you feel

17    like you need to ask for an explanation or consult with Mr.

18    Johnson, I'll be happy to give you the opportunity to do so.

19         Now, again, for the record, would you please state your

20    full name?

21                THE DEFENDANT:  Natalie Paige Cochran.

22                THE COURT:  How old are you, Ms. Cochran?

23                THE DEFENDANT:  39.

24                THE COURT:  And how much education have you had?

25                THE DEFENDANT:  I have a Doctorate of Pharmacology
```

1   from West Virginia University and I have a Management of

2   Healthcare Administration degree.

3           THE COURT:  So, I take it you can read and write?

4           THE DEFENDANT:  Yes, Your Honor.

5           THE COURT:  Have you recently been under the care

6   of a doctor, psychiatrist or other medical professional for

7   any serious physical or emotional illness?

8           THE DEFENDANT:  Yes, Your Honor.

9           THE COURT:  Would you please give me the

10  circumstances of that?  And the reason it's necessary is

11  that I need to make certain that you are competent and

12  capable of entering an informed plea.

13          THE DEFENDANT:  I've had two heart surgeries in

14  the last 60 days and I have an implantable heart monitor

15  now.  I frequently pass out because my heart rate goes too

16  high, but it doesn't affect me cognitively.

17          THE COURT:  Understood.  Are you using any form of

18  controlled substance, or medication, or alcohol that might

19  affect your ability to understand this proceeding?

20          THE DEFENDANT:  No, Your Honor.

21          THE COURT:  And, Mr. Johnson, do you have any

22  reason to question the competence of your client to proceed?

23          MR. JOHNSON:  I do not, Your Honor.

24          THE COURT:  Very well.

25      Ms. Cochran, I find that you are competent and capable

 1    of entering an informed plea.

 2        Now, Ms. Cochran, do you believe you have had adequate

 3    time to discuss your case with Mr. Johnson?

 4            THE DEFENDANT:  Yes, Your Honor.

 5            THE COURT:  And has he been able to answer your

 6    questions about how best to proceed?

 7            THE DEFENDANT:  Yes, Your Honor.

 8            THE COURT:  Are you completely satisfied with the

 9    legal advice he's rendered to you thus far?

10            THE DEFENDANT:  Yes, Your Honor.

11            THE COURT:  Now, Mr. Johnson, during the time

12    you've represented Ms. Cochran, has she been cooperative

13    with you?

14            MR. JOHNSON:  She has, Your Honor.

15            THE COURT:  Have you had adequate time to discover

16    the Government's case, to consider potential defenses, and

17    consider potential sentences?

18            MR. JOHNSON:  Yes, Your Honor.

19            THE COURT:  And have you discussed all of these

20    things, all of these issues, with your client?

21            MR. JOHNSON:  Yes, I have.

22            THE COURT:  Now, Mr. Johnson, is there a proposed

23    plea agreement in the case?

24            MR. JOHNSON:  There is, Your Honor.

25            THE COURT:  I'm going to ask Ms. Robeson to please

1    summarize the contents of that agreement.

2         MS. ROBESON:  Yes, Your Honor.  Paragraph 1

3    outlines the charging agreement.  Ms. Cochran is charged in

4    a 26-count indictment.  Counts 1 through 11 charge

5    violations of 18 U. S. C. Section 1343, which are wire fraud

6    counts.  Count 12 charges a violation of 18 U. S. C. Section

7    1344, which is bank fraud.  Counts 13 through 16 are

8    violations of 18 U. S. C. Section 1028A, which is aggravated

9    identity theft.  Count 17 charges another violation of 18 U.

10   S. C. Section 1343, wire fraud.

11        And Counts 18 through 24 charge violations of 18 U. S.

12   C. Section 1957, money laundering offenses.  Counts 25 and

13   26 charge bankruptcy fraud offenses, a violation of 18 U. S.

14   C. Section 157(2) and 18 U. S. C. Section 152(2)

15   respectively.

16        Paragraph 2 outlines the resolution of the charges.

17   Ms. Cochran will plead guilty to Count 6 of the indictment,

18   which is a wire fraud violation, and Count 18, which is a

19   money laundering violation.

20        Count 3 sets forth the maximum penalty, which is -- for

21   the combined for both of those charges is up to 30 years in

22   prison; a fine up to $500,000.00; up to three years of

23   supervised release per count; and a special assessment of

24   $200.00.

25        Paragraph 4 provides for a payment of the $200.00

1    special assessment.

2        Paragraph 5 outlines Ms. Cochran's restitution

3    responsibility.  Provides that all monetary penalties are

4    due and payable immediately.  She agrees that she owes

5    restitution in the amount of $2,564,063.33, minus the amount

6    of money returned to the victims, which the Court decides to

7    credit against her restitution debt.  She further agrees to

8    cooperate with the United States and the Financial

9    Litigation Unit in collecting any amounts due and payable.

10       Paragraph 6 is the forfeiture section.  The defendant

11   agrees to forfeit any property that is in her possession or

12   under her control that is proceeds or is derived from

13   proceeds she gained unlawfully from her wire fraud offenses

14   and bank fraud.  Ms. Cochran also agrees that she will not

15   contest the forfeiture in the indictment, which includes a

16   $1 million money judgment for the property that was seized

17   during the investigation, and this list includes $44,935.01

18   and a check which represents the funds that were in the

19   First Community Bank account held in Tactical Solutions

20   Group's name, a 1965 Shelby Cobra, two 2017 Yamaha

21   motorcycles, a 2014 Big TEX dump truck, diamond hoop

22   earrings, a Toyota 4Runner, a 2008 Dodge Ram, a 2014 Sundown

23   Rancher trailer.

24       And then, real property located at 219 North Eisenhower

25   Drive, Beckley, and also at 210 Parkwood Drive, Beckley, and

1    as part of a global resolution in this case and the parallel

2    forfeiture action, which is located at 5:19-cv-537, and

3    that's *United States v. Real Property Situated at 433 4-H*

4    *Lake Drive, Daniels, Raleigh County, West Virginia, et. al.*

5        The United States agrees that it will not pursue

6    further civil or criminal forfeiture proceedings against the

7    particular property of 433 4-H Lake Drive if Ms. Cochran

8    will pay the $91,837.43 in lieu of the forfeiture of her

9    interests in that particular piece of real property, but Ms.

10   Cochran will have to resolve any claims which third parties

11   or lienholders have towards the 433 4-H Lake Drive property

12   independently.

13       Paragraph 7 is Ms. Cochran authorizing the Financial

14   Litigation Unit in the U. S. Attorney's Office to obtain a

15   credit report from any major credit reporting agency prior

16   to a sentencing to assess her ability to pay a fine.

17       Paragraph 8 requires her truthful cooperation with law

18   enforcement, including providing grand jury and trial

19   testimony, if requested.

20       Paragraph 9 grants her use immunity for statements or

21   testimony which she provides unless she violates the

22   agreement except as expressly provided for in Paragraph 11.

23       Paragraph 10 limits use immunity to exclude information

24   obtained from independent legitimate sources.  The

25   Government also reserves the right to prosecute her for

1    perjury or false statement, if applicable.

2        Paragraph 11 provides for a Stipulation of Facts and a

3    Waiver of Federal Rule of Evidence 410.  The parties agree

4    that the facts comprising the offenses of conviction include

5    those set forth in the attached Stipulation of Facts.  Ms.

6    Cochran agrees that if she withdraws from the agreement or

7    it is voided as a result of her breach of its terms and she

8    is tried on the charges in the indictment, the Government

9    may use and introduce the Stipulation of Facts in its case

10   in chief, cross examination, or in rebuttal.  Ms. Cochran

11   voluntarily waives any right she has pursuant to Rule 410

12   that would prohibit such use.

13       The Government cannot use the stipulation if the Court

14   rejects the plea agreement through no fault of Ms. Cochran

15   or declares it void due to the Government's breach of its

16   terms.

17       The parties understand that the Court is not bound by

18   the stipulation and if some or all of it is not accepted by

19   the Court, the parties will not have the right to withdraw

20   from the agreement.

21       Paragraph 12 covers the waiver of appeal and collateral

22   attack.  Ms. Cochran and the United States agree that she

23   waives her right to appeal any sentence except if the

24   sentence of imprisonment deviates from the agreed-upon range

25   of 37 to 135 months as set forth in Paragraph 13.

1        Ms. Cochran also waives her right to challenge her

2   guilty plea, conviction and sentence in any collateral

3   attack, including a motion brought under 28 U. S. C. Section

4   2255.  Neither waiver applies if it is based on a claim of

5   ineffective assistance of counsel.

6        Paragraph 13 provides that pursuant to Rule

7   11(c)(1)(C), the United States agrees that a sentence of

8   imprisonment of at least 37 months and no more than

9   135 months is an appropriate disposition.  This agreement is

10  not binding on the District Court unless the District Court

11  refuses to accept this agreement, this plea agreement.  If

12  the District Court refuses to accept the plea agreement, Ms.

13  Cochran has the right to void the agreement and may withdraw

14  her guilty plea.

15       Paragraph 14 provides that Ms. Cochran waives her right

16  to request records under FOIA or the Privacy Act pertaining

17  to the investigation or prosecution of her case following

18  final disposition.

19       Paragraph 15 provides that the matter of sentencing is

20  within the sole discretion of the Court.  The Government has

21  made no representations or promises as to a specific

22  sentence.  The Government does reserve the right to inform

23  the Probation Office and the Court of all relevant facts and

24  conduct, present evidence and argument relevant to the

25  Section 3553(a) sentencing factors, respond to questions,

1    correct mistakes in the Presentence Report, respond to

2    statements made by or on behalf Ms. Cochran, and advise the

3    Court of the extent of her cooperation and acceptance of

4    responsibility.

5        Paragraph 16 sets forth that if either party violates

6    the terms of this agreement, the other party will have the

7    right to void this agreement.

8        And Paragraph 17 identifies the written agreement as

9    the entire agreement between the parties.

10        Ms. Cochran has initialed each page and the plea has

11    been signed by her, her attorney, and by myself on behalf of

12    the United States.

13            THE COURT:  Thank you very much.

14        And I would ask Mr. Johnson if that adequately

15    summarizes the entire agreement between the parties?

16            MR. JOHNSON:  Yes, it does, Your Honor.

17            THE COURT:  Ms. Cochran, do you understand what

18    the agreement does?

19            THE DEFENDANT:  Yes, Your Honor.

20            THE COURT:  Do you understand what it requires of

21    you?

22            THE DEFENDANT:  Yes, Your Honor.

23            THE COURT:  Do you have any questions about the

24    plea agreement?

25            THE DEFENDANT:  No, Your Honor.

```
 1              THE COURT:  Were each of the paragraphs of the
 2   plea agreement discussed with you prior to you reaching an
 3   agreement with the Government?
 4              THE DEFENDANT:  Yes, Your Honor.
 5              THE COURT:  Are those, in fact, your initials on
 6   the first ten pages of the plea agreement?
 7              THE DEFENDANT:  Yes, sir.
 8              THE COURT:  And is that your signature at the
 9   bottom of Page 11 and on the Stipulation of Facts labeled
10   Exhibit A?
11              THE DEFENDANT:  Yes, Your Honor.
12              THE COURT:  Now, do you also understand that you
13   have entered into a Stipulation of Facts and that could be
14   entered into evidence against you as evidence if you were to
15   breach the plea agreement and go to trial?
16              THE DEFENDANT:  Yes, I do, Your Honor.
17              THE COURT:  And do you understand that you have
18   waived the right under Federal Rule of Evidence 410 to
19   challenge the use of that stipulation?
20              THE DEFENDANT:  Yes, I do, Your Honor.
21              THE COURT:  Now, do you understand, Ms. Cochran,
22   that the Court has the ability to reject or accept the plea
23   agreement and do you, indeed, wish the Court to accept the
24   plea agreement?
25              THE DEFENDANT:  Yes, Your Honor.
```

1          THE COURT:  Well, I will defer acceptance of the

2    plea agreement until I have had an opportunity to review

3    your Presentence Investigation Report.  Even so, I order the

4    original plea agreement to be filed as part of the record in

5    this case.

6        Now, have you received a copy of the indictment, Ms.

7    Cochran?

8          THE DEFENDANT:  Yes, I have, Your Honor.

9          THE COURT:  Have you had an opportunity to review

10   it?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  Would you like me to read it to you

13   again or do you wish to waive that reading?

14         THE DEFENDANT:  I would like to waive that

15   reading, Your Honor.

16         THE COURT:  Ms. Cochran, how do you plead to the

17   charges contained in Counts 6 and 18 of the indictment?

18         THE DEFENDANT:  I plead guilty, Your Honor.

19         THE COURT:  Now, Ms. Cochran, before I accept that

20   plea, I want to make sure that there is a factual basis for

21   it, that you understand the nature of the charges against

22   you and the consequences of pleading guilty, that you

23   understand the constitutional and other legal rights you

24   give up by pleading guilty, and that, also, that you're

25   doing so voluntarily.

1     Now, let me go over the charges with you.  First, Count

2     6 of the indictment charges you with wire fraud in violation

3     of 18 U. S. C. Section 1343 and that statute states in

4     pertinent part as follows:  Whoever, having devised or

5     intending to devise any scheme or artifice to defraud, or

6     for obtaining money or property by means of false or

7     fraudulent pretenses, representations, or promises,

8     transmits or causes to be transmitted by means of wire,

9     radio, or television communication, in interstate or foreign

10    commerce, any writings, signs, signals, pictures or sounds

11    for the purposes of executing such scheme or artifice, shall

12    be guilty of a crime against the United States.

13    Now, if the Government had to go to trial in this case,

14    it would have to prove the following elements against you

15    beyond a reasonable doubt:

16    First, that you knowingly -- pardon me.  You knowingly

17    devised or knowingly participated in a scheme or artifice to

18    defraud; or you knowingly devised or knowingly participated

19    in a scheme or artifice to obtain money or property by means

20    of false or fraudulent pretenses, representations or

21    promises; and the false pretenses, representations or

22    promises comprising thereof were material; and you acted

23    with the intent to defraud; and then, finally, in advancing,

24    or furthering, or carrying out this scheme to defraud or

25    scheme to obtain money or property by means of false or

1    fraudulent pretenses, representations or promises, you did,

2    indeed, transmit, or cause to be transmitted, by a wire

3    entered into interstate commerce some communication for the

4    purpose of executing the scheme to defraud.

5        Now, the phrase any scheme or artifice to defraud means

6    any deliberate plan of action or course of conduct by which

7    someone intends to deceive or to cheat another, or by which

8    someone intends to deprive another of something of value.

9        The phrase false or fraudulent pretenses,

10   representations or promises means a statement or an

11   assertion which concerns material or important fact, or a

12   material or important aspect of the matter in question, and

13   it was either known to be untrue at the time it was made or

14   used, or that it was made or used with reckless indifference

15   as to whether it was, in fact, true or false, and made or

16   used with the intent to defraud.

17       A false statement is "material" under the statute if it

18   has a natural tendency to influence, or is capable of

19   influencing, the decision of the person or entity to which

20   it is addressed.

21       An intent to defraud means to act knowingly and with

22   the intention or the purpose to deceive or to cheat.  An

23   intent to defraud is accompanied ordinarily by a desired

24   purpose to bring about some gain or benefit to one's self,

25   or some other person, or by a desire or purpose to cause

1   some loss to some person.

2       And then, finally, the phrase "transmits by means of

3   wire, radio or television communication in interstate

4   commerce" means to send from one state to another by means

5   of telephone or telegraph lines or by means of radio or

6   television.

7       Now, Ms. Cochran, considering those definitions, do you

8   consider yourself to be guilty of violating 18 U. S. C.

9   Section 1343?

10          THE DEFENDANT:  Yes, Your Honor, I do.

11          THE COURT:  Now, could you please explain to me

12  what you did that you believe makes you guilty of that

13  offense?

14          THE DEFENDANT:  In Count 6, I received -- or I was

15  a party that received $511,000.00 from an investor that was

16  working with our company for a contract that was not

17  legitimate at that time.

18          THE COURT:  Understood.  And did you intend, when

19  you acted, with an intent to defraud?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  And as a part of this scheme that you

22  had, did you transmit or cause to be transmitted by wire

23  some communication that facilitated the scheme to defraud?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  What was that exactly?

1        THE DEFENDANT:  I knew -- I knew that someone was

2   going in to wire it and I knew that the person was

3   communicating with the other party to have it wired to us.

4        THE COURT:  Understood.  Were they acting at your

5   direction in using the wires to do so?

6        THE DEFENDANT:  Yes, Your Honor.

7        THE COURT:  Thank you.  And did these acts occur

8   on or about October 1, 2018, at or near Beckley, Raleigh

9   County, in the Southern District of West Virginia?

10       THE DEFENDANT:  Yes, sir, they did.

11       THE COURT:  Thank you.

12   Let's move to the next count, which is Count 18.  It

13   charges you with an unlawful monetary transaction in

14   violation of 18 U. S. C. Section 1957, and that statute

15   states pertinently as follows:  Whoever in the United States

16   knowingly engages or attempts to engage in a monetary

17   transaction in criminally deprived property that is of a

18   value greater than $10,000.00 and is derived from specified

19   unlawful activity commits a crime against the United States.

20   Now, if the Government had to go to trial in this case,

21   it would have to prove the following elements against you

22   beyond a reasonable doubt:

23   First, that you knowingly engaged in the monetary

24   transaction; that the monetary transaction was in property

25   of a value greater than $10,000.00; that the property was

1    derived from a crime specified in the statute; that you knew

2    the monetary transaction involved proceeds of that specified

3    crime; the monetary transaction took place in the United

4    States; and that the monetary transaction effected

5    interstate commerce.

6        Now, an act is done knowingly if it's done voluntarily

7    and intentionally and not because of mistake, or accident,

8    or some innocent reason.

9        A withdrawal of $37,500.00 from TSG's City National

10   Bank account to purchase a 1965 Shelby Cobra would qualify

11   as a monetary transaction.

12       The specified unlawful activity in the elements

13   includes wire fraud.

14       And the term interstate commerce means trade or travel

15   from one state to another.

16       Now, Ms. Cochran, considering those definitions, do you

17   consider yourself to be guilty of violating 18 U. S. C.

18   Section 1957?

19           THE DEFENDANT:  Yes, sir, I do.

20           THE COURT:  Ms. Cochran, what is it exactly that

21   you did that you believe makes you guilty of that offense?

22           THE DEFENDANT:  I -- I went into the bank and used

23   money from the business account and wired it to the

24   manufacturer of the Shelby Cobra so that it could be

25   purchased for my husband.

1          THE COURT:  Thank you.  And did you know that the

2     proceeds of the specified crime, the wire fraud, were part

3     of this monetary transaction?

4          THE DEFENDANT:  Yes, sir, I did.

5          THE COURT:  And where did you send this wire

6     transaction to?

7          THE DEFENDANT:  I -- I'm not sure.  It was to a

8     company in Florida, but I'm not sure if their accountant was

9     in North Carolina or Florida.  I don't -- I don't remember.

10          THE COURT:  That's fine.  It was, however, in the

11     United States, I take it?

12          THE DEFENDANT:  Yes, sir, it was.

13          THE COURT:  And did these acts occur on or about

14     May 16, 2018, at or near Beckley, in Raleigh County, in the

15     Southern District of West Virginia?

16          THE DEFENDANT:  I believe so, Your Honor.

17          THE COURT:  Thank you.

18       Ms. Robeson, would you please make a proffer as to what

19     the Government would have been able to prove in this case as

20     to these two charges?

21          MS. ROBESON:  Yes, Your Honor.  The United States

22     would meet its burden of proof by showing texts from Ms.

23     Cochran to the various individuals that she induced to

24     invest in Government contracts that she falsely claimed her

25     company, Technology Management Solutions, which is TMS, and

1    Practical Solutions Group, PSG had won -- and that would

2    include the text to investor in Count 6, where she said --

3         THE COURT:  Ms. Robeson, if I could, if you could

4    please not so much speak loudly, but just enunciate, as best

5    you're able to do so, into the microphone.

6         MS. ROBESON:  Yes, Your Honor.  I'm sorry for

7    that.  But we would show texts from Ms. Cochran to various

8    investors, including the investor that's involved in Count

9    6, wherein Ms. Cochran stated that her companies had won

10   government contracts and she was soliciting investments from

11   these people to the contracts.

12       We would then show evidence that Ms. Cochran's

13   companies, nor Ms. Cochran, had won any contracts, including

14   the contract that was at issue in Count 6.

15       We would also show evidence from Ms. Cochran's bank

16   statements and the bank statements of the companies showing

17   that they did not have income coming from government

18   contracts.  There was no expenditures related to contracts.

19       And then, finally, we would provide testimony from the

20   government -- from a government agent saying that these

21   companies had not won a contract and that the contract

22   number she provided to this investor, as well as other

23   investors, were not consistent with how the U. S. Government

24   writes contract numbers at all.

25       And then we would show the bank statement showing the

```
 1    wire of the half million dollars going into Ms. Cochran's
 2    account.  So, that is for Count 6.
 3         For Count 18, we would rely on the same evidence to
 4    show that Ms. Cochran knew that the money in her bank
 5    accounts were from illegal proceeds.  And then, we would
 6    show that expenditure of $37,500.00 to the company in
 7    Florida to purchase the 1965 Shelby Cobra.
 8              THE COURT:  Anything further?
 9              MS. ROBESON:  There would be lots of testimony
10    from various witnesses, government agencies, and so forth,
11    Your Honor.
12              THE COURT:  Does that conclude your proffer?
13              MS. ROBESON:  Yes, Your Honor.
14              THE COURT:  Ms. Cochran, is what Ms. Robeson just
15    said correct?
16              THE DEFENDANT:  I -- I think parts of it are, Your
17    Honor, yes.
18              THE COURT:  Well, we can't go forward with that.
19    What part of it do you quarrel with?
20              THE DEFENDANT:  I just -- I haven't heard all of
21    the witnesses' testimony, so I don't know what they would
22    say or what they wouldn't say, I guess is what I meant.  She
23    said she had government agencies and agents that were
24    willing to come speak, and witnesses, and I don't know what
25    they would say because I haven't heard any of that
```

1   testimony.

2           THE COURT:  Well, I think it's essential that for

3   a known and voluntary plea, you do, indeed, know what the

4   summary of the Government's proof is.  Are you able to

5   elaborate further on the testimony that the United States

6   would expect to elicit, Ms. Robeson?

7           MS. ROBESON:  Yes, Your Honor.  The first

8   testimony would be from Robert Blalock.  And this testimony

9   has substantially been provided to the defense through his

10  report.  And it would go through the contracts that Ms.

11  Cochran had listed, including the contract she offered as to

12  Count 6 and his findings that these contracts were not

13  awarded to Ms. Cochran or TSG or TMS.

14      The Government would also offer the testimony of the

15  owner -- Count 6 -- and he would say that Ms. Cochran had

16  induced him to --

17          THE COURT:  Ms. -- Ms. Robeson, you broke up

18  there.  The owner of what or whom?

19          MS. ROBESON:  The investor in Count 6 is the owner

20  of a business.  It's owned by several men.  And we would

21  offer the testimony of the business owners about their

22  communications with Ms. Cochran.  And the summary of this

23  testimony has been provided to the defense in a report

24  already, but he would testify that Ms. Cochran intended to

25  invest in these contracts and that he sent the wire,

1   believing that he was investing in contracts.

2        We would also show text messages between Ms. Cochran

3   and the owner of the company, as well as other investors,

4   which show the same thing.  These text messages have already

5   been provided to the defense.

6            THE COURT:  Thank you.

7        Now, Ms. Cochran, is what Ms. Robeson said is in

8   supplement there and previously correct from your

9   perspective?

10            THE DEFENDANT:  Yes, Your Honor.  I am generally

11   aware of the nature of the Government's evidence against me

12   and her proffer is consistent with that.

13            THE COURT:  Thank you.

14        Mr. Johnson, are you satisfied that if this case went

15   to trial, there would be no meritorious legal defense that

16   you could raise to the charge?

17            MR. JOHNSON:  Yes, Your Honor.

18            THE COURT:  Are you satisfied to this point, to

19   the best of your knowledge, that Ms. Cochran's

20   constitutional and other rights have been fully observed?

21            MR. JOHNSON:  Yes, I am.

22            THE COURT:  And do you concur in her now stated

23   intention to enter a plea of guilty?

24            MR. JOHNSON:  Pursuant to the plea agreement, yes,

25   I do, Your Honor.

1          THE COURT:  And, Ms. Cochran, based on that, I

2     find that there is a sufficient factual basis for your plea

3     of guilty.

4          Do you understand, Ms. Cochran, that you're pleading

5     guilty to felony offenses and that if your plea is accepted,

6     you will be adjudged guilty of those offenses?

7          THE DEFENDANT:  Yes, Your Honor, I do.

8          THE COURT:  And I will tell you that that judgment

9     may deprive you of valuable civil rights, such as your right

10    to vote, to hold public office, to serve on a jury, and to

11    possess any kind of firearm or gun.

12         Now, do you understand that you expose yourself, as to

13    Count 6 of the indictment, to a maximum penalty of 20 years

14    imprisonment by entering into this plea agreement?

15         THE DEFENDANT:  Yes, sir, I do.

16         THE COURT:  And do you understand that, in

17    addition to this, I may fine you up to $250,000.00, or twice

18    the gross pecuniary gain or loss resulting from the offense?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  And do you understand that, in

21    addition, you would be subject to a term of supervised

22    release of as much as three years on Count 6?

23         THE DEFENDANT:  Yes, Your Honor.

24         THE COURT:  Let me tell you, as well that

25    supervised release means that after imprisonment, you would

1    be supervised by a probation officer under conditions set by

2    the Court.

3        Now, if you violated the terms of supervised release,

4    the Court could revoke your term of supervised release and

5    order you to serve up to two years in prison.

6        Do you also understand that, in addition, you would be

7    required to pay a special assessment of $100.00 for having

8    been convicted of this felony offense?

9            THE DEFENDANT:  Yes, sir, I do.

10            THE COURT:  And do you understand that, in

11    addition, you would be required to make restitution to any

12    crime victims?

13            THE DEFENDANT:  Yes, Your Honor.

14            THE COURT:  And do you understand the amount of

15    restitution you have agreed to pay may exceed the actual

16    loss to the victim, or victims, arising out of offenses to

17    which you are pleading guilty?

18            THE DEFENDANT:  Yes, sir, I do.

19            THE COURT:  Now, all of that is as to Count 6.

20    Let me talk to you about Count 18.  On that count, you are

21    looking at a maximum penalty of ten years.  You may be

22    fined, again, up to $250,000.00, or twice the gross

23    pecuniary gain or loss resulting from your conduct,

24    whichever is greater, another supervised release term of

25    three years; also, a separate liability for two additional

1    years in prison if you violate your supervised release term;

2    another special assessment of $100.00; and the same

3    restitution obligations about which I spoke to you earlier.

4    Do you understand that?

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  And so, that aggregates to a maximum

7    term of imprisonment on both counts of 30 years; a

8    $500,00.00 fine, or twice the gross pecuniary gain or loss

9    resulting from your conduct, whichever is greater; a

10   supervised release term of three years, because the

11   supervised release term on each count would run

12   concurrently; and then, I would say that if the Court --

13   well, the Court would impose the $200.00 special assessment

14   for the two felony offenses.  The restitution obligations

15   remain the same.  And do you understand that you have

16   agreed, pursuant to the plea agreement, to make restitution

17   in the amount of $2,564,000.00 -- $564 -- $63.33, less the

18   amount of money returned to the victims if the Court so

19   decides to treat those payments as credit against your

20   restitution debt?

21             THE DEFENDANT:  Yes, sir, I do.

22             THE COURT:  Now, your plea agreement contains a

23   criminal forfeiture provision that provides you agree to

24   forfeit to the United States a number of items of property

25   set forth in the plea agreement.  Are you familiar with that

1    listing that is set forth in the plea agreement dated

2    September 8th, 2020?

3              THE DEFENDANT:  Yes, sir, I am.

4              THE COURT:  Well, what was the connection between

5    that property to be forfeited and the crimes to which you

6    are pleading guilty?

7              THE DEFENDANT:  It's my understanding that it was

8    all purchased with business funds that were brought in from

9    investors.  There's a few things on the forfeiture list I

10   wasn't even aware of, but if the Government has it, I agree

11   to forfeit it and I don't lay any claim to it.

12             THE COURT:  Understood.

13         Have you and Mr. Johnson discussed the application of

14   the United States Sentencing Guidelines guideline?

15             THE DEFENDANT:  Yes, sir, we have.

16             THE COURT:  I want to tell you a few things about

17   the guidelines.  First, I can't determine the applicable

18   advisory guideline range until after the Presentence

19   Investigation Report has been completed by the probation

20   officer and then, both you, and the Government, and Mr.

21   Johnson will have an opportunity to review it and challenge

22   anything therein.

23         Now, I will tell you the sentence I may impose may be

24   different from any estimate Mr. Johnson or anyone else may

25   have given you.  What I will do is calculate the applicable

1    advisory U. S. guideline range, consider that guideline

2    range, and then also consider any possible departures under

3    the guidelines and any other sentencing factors pursuant to

4    18 U. S. C. Section 3553(a).

5         Now, Mr. Paragraph 13 of the plea agreement contains a

6    provision pursuant to Rule 11(c)(1)(C) of the Federal Rules

7    of Criminal Procedure and, in that provision, the parties

8    agree that a sentence of imprisonment of at least 37 months

9    and no more than 135 months is appropriate in this case.  Do

10   you understand that this agreement, pursuant to Federal Rule

11   of Criminal Procedure 11(c)(1)(C), only applies to a

12   sentence of imprisonment and it's not binding on the Court

13   unless and until the Court accepts the plea agreement?  Do

14   you understand that?

15              THE DEFENDANT:  Yes, sir, I do.

16              THE COURT:  I'll tell you, as well, that if the

17   Court refuses to accept the plea agreement, you have the

18   right to void it and withdraw from your guilty plea.

19        Now, I will tell that I'm not bound by the advisory

20   guideline range and I have the authority to impose a

21   sentence that is more or less severe than the sentence that

22   would otherwise be called for by the guidelines.

23        I want to tell you, as well, that parole has been

24   abolished and you would not be released on parole if you are

25   sentenced to prison.

1          Also, if you don't like my sentence, you would still be

2     bound by your plea and would have no right to withdraw it,

3     assuming, again, that the Court accepted the plea agreement

4     and chose to impose sentence consistent with the agreement.

5     Do you understand all of that?

6               THE DEFENDANT:  Yes.

7               THE COURT:  Do you understand also that you have

8     the right to testify at the sentencing hearing, if you so

9     desire?

10               THE DEFENDANT:  Yes, Your Honor.

11               THE COURT:  Now, let me talk to you about

12     appellate rights.  Ordinarily, you would have the right to

13     appeal your conviction if you believed your guilty plea was

14     unlawful, or involuntary, or there was some other

15     fundamental defect in the proceedings that was not waived by

16     your guilty plea or the plea agreement.  And I would say

17     that you and the Government have the right to appeal any

18     sentence that I impose, but in the plea agreement, you have

19     waived much of that right to challenge your guilty plea,

20     conviction, and sentence by a collateral attack.  A

21     "collateral attack"  is simply an action that you would file

22     in federal court separate from your criminal case to try to

23     attack your conviction or sentence.  Do you understand that?

24               THE DEFENDANT:  Yes, Your Honor, I do.

25               THE COURT:  Now, I will tell you that the waivers

1    you have agreed to do not apply to a post-conviction

2    collateral attack or even a direct appeal based on a claim

3    of ineffective assistance of counsel.  You retain the right

4    to bring a direct appeal or a collateral attack that is

5    based on any claim that your attorney was ineffective.  Do

6    you understand that?

7              THE DEFENDANT:  Yes, I do.

8              THE COURT:  And do you understand that you have

9    waived all rights to request to receive from any department

10   or agency of the United States any records related to the

11   investigation or prosecution of your case under the Freedom

12   of Information Act or the Privacy Act following final

13   disposition?

14             THE DEFENDANT:  Yes, sir, I do.

15             THE COURT:  And have you discussed the waiver of

16   these appellate rights with Mr. Johnson?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  And having done so, do you still wish

19   to waive these rights?

20             THE DEFENDANT:  Yes, Your Honor.

21             THE COURT:  Well, Ms. Cochran, based upon all of

22   your answers, I find that you understand the nature of the

23   charges and the consequences of pleading guilty.

24        Now, let me talk to you about your constitutional

25   rights.  I'm sure you know and you have availed yourself of

1     the right to have an attorney during every stage of the

2     Government's prosecution of this matter and you had the

3     right to have counsel appointed to you if you couldn't

4     afford an attorney and I believe you availed yourself of

5     that right in this case.

6          You have the right to continue to plead not guilty to

7     the charges, if you wish to do so, but if you continue to

8     plead guilty, you give up your right to a speedy and a

9     public trial by a jury.  Do you understand that?

10               THE DEFENDANT:  Yes, Your Honor.

11               THE COURT:  And by doing so, you give up your

12     right to force the Government to come forward with witnesses

13     and evidence against you.  Do you understand that?

14               THE DEFENDANT:  Yes, Your Honor.

15               THE COURT:  Do you know that you would have been

16     presumed inspect until the Government presented enough

17     evidence, if ever, to satisfy both this judge and a jury of

18     your guilt beyond a reasonable doubt?

19               THE DEFENDANT:  Yes, sir, I do.

20               THE COURT:  Do you understand when you admit your

21     guilt, as you're doing here, you relieve the Government of

22     the burden of proving your guilt?

23               THE DEFENDANT:  Yes, Your Honor.

24               THE COURT:  Now, do you understand that you and

25     your counsel, Mr. Johnson, would have had the right to

1    confront and cross examine your accusers and to test the

2    truth of what they said at trial?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  Do you understand that had you desired

5    to go to trial and wished to call witnesses, you would have

6    been entitled to the services of the United States Marshal

7    to bring those witnesses to court under subpoena?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  And by pleading guilty, you're giving

10   up that right to call witnesses except at your sentencing.

11             THE DEFENDANT:  I understand, Your Honor.

12             THE COURT:  Do you understand you would have had

13   the right to move to suppress any evidence of any nature

14   that was illegally or unlawfully obtained?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  And do you understand that you would

17   have had the right to testify at trial had you decided to do

18   so, but that you could never have been forced or compelled

19   to testify and that, indeed, the Court would have instructed

20   the jury, had you gone to trial and remained silent; that

21   is, chosen not to take the witness stand, or call any

22   witnesses, or even to present any evidence whatsoever in

23   your behalf, that they could not, the jury could not convict

24   you because of your exercise of your constitutional right to

25   remain silent, but only based, again, on proof offered

1    beyond a reasonable doubt by the Government?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  Ms. Cochran, I find based on those

4    answers that you understand the constitutional and other

5    legal rights you're giving up by pleading guilty.

6        Now, knowing all of these things, Ms. Cochran, do you

7    still wish to plead guilty at this time?

8              THE DEFENDANT:  Yes, sir, I do.

9              THE COURT:  Has any person forced you, or

10   threatened you, coerced you, intimidated you, or talked you

11   into entering a guilty plea against your will?

12             THE DEFENDANT:  No, sir, they have not.

13             THE COURT:  Are you acting voluntarily and of your

14   own free will by entering this guilty plea and is it,

15   indeed, your decision?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  Has anyone promised you or told you

18   something that's different from what I've told you here

19   today in order to get you to plead guilty?

20             THE DEFENDANT:  No, sir, they have not.

21             THE COURT:  And have you, indeed, been fully able

22   to understand what's going on here today?

23             THE DEFENDANT:  Yes, Your Honor.

24             THE COURT:  Now, Ms. Cochran, based on those

25   answers, I find that your guilty plea is voluntary.

1          Do you have any questions or second thoughts about

2     entering a guilty plea?

3               THE DEFENDANT:  No, sir.  Thank you.

4               THE COURT:  If not, please sign the Written Plea

5     of Guilty Form that Mr. Johnson has.

6          And then, Mr. Johnson, if you would sign it, as well.

7               MR. JOHNSON:  Yes, Your Honor.

8          Your Honor, both myself and Ms. Cochran have signed the

9     Written Plea of Guilty Form.  I will tender it to the

10    courtroom deputy upon the conclusion of this hearing.

11              THE COURT:  Thank you very much.

12         Let the record reflect, as Mr. Johnson said, that Ms.

13    Cochran has executed the Written Plea of Guilty Form, that

14    Mr. Johnson has also signed it, and that it will soon be

15    tendered in person to the clerk for filing.

16         In the case of *United States v. Natalie P. Cochran,* I

17    find that Ms. Cochran is fully competent and capable of

18    entering into an informed plea, that there is a sufficient

19    factual basis for her plea of guilty, that Ms. Cochran

20    understands the nature of the charges and the consequences

21    of a guilty plea to those charges, and that she understands

22    the constitutional and other legal rights she's giving up

23    because of the plea.

24         I also find that Ms. Cochran's plea is voluntary.

25         While I have deferred acceptance of the plea agreement

1  until I have had an opportunity to review the Presentence

2  Investigation Report, Ms. Cochran, I do accept your guilty

3  plea.

4      I'm going to defer the adjudication of guilt given the

5  nature of your plea agreement at this time and I do this so

6  that I can review their Presentence Investigation Report

7  first.

8      I direct the Probation Office to conduct a Presentence

9  Investigation of Ms. Cochran, prepare a draft Presentence

10  Investigation Report, and disclose its contents to the

11  Government and the defendant, Ms. Cochran, no later than

12  November 16, 2020.

13      I further direct that counsel make any objections to

14  the draft report no later than November 30, 2020.

15      The final report will then be due to the Court no later

16  than December 14, 2020.

17      Both parties must file sentencing memoranda with the

18  Court no later than December 21, 2020 and, counsel, please

19  include any objections you intend to pursue in your

20  sentencing memorandum.

21      Now, the Presentence Report deadlines have been set by

22  the Court and can only be modified after a showing of good

23  cause by counsel in writing.

24      If there are no objections, I'm going to set this case

25  down for sentencing on January 4, 2021 at 11:00 a.m.

1        Now, it's my understanding that Ms. Cochran is

2    presently on home detention.  I'll be willing to hear from

3    the Government regarding its views of the continuation of

4    that protocol.

5            MS. ROBESON:  Your Honor, we will follow the

6    recommendation of Probation and continue her on home

7    detention until sentencing.

8            THE COURT:  Understood.

9        Do you wish to be heard on that, Mr. Johnson?

10            MR. JOHNSON:  No, not at this time, Your Honor.

11    Thank you.

12            THE COURT:  Well, Ms. Cochran was originally on

13    home incarceration and I believe has been on home detention

14    since December, 2019.  No violation reports have been filed

15    and the Release Status Report, as noted by Ms. Robeson,

16    suggests that Probation does not oppose Ms. Cochran

17    continuing home detention on her previously executed bond.

18        So, I find by clear and convincing evidence that Ms.

19    Cochran is unlikely to flee and unlikely to pose a danger to

20    any other person or the community if she is released.

21        Ms. Cochran, I order you to make such arrangements as

22    are necessary with the United States Marshal's Office and

23    Probation after this hearing.

24        You are released on your previously executed $10,000.00

25    surety bond subject to the conditions set forth in the order

1    setting conditions of release previously filed herein and

2    any special conditions that were also set.

3         Now, I'm directing you to appear back here on January

4    4th, 2021 at 11:00 a.m. and I do want to tell you something

5    that's very, very important.  If you don't appear, I may

6    impose an additional sentence upon you of up to ten years in

7    prison or $250,000.00 as a fine as to Count 6 and it would

8    be five years and a $250,000.00 fine as to Count 18.  It's

9    essential that you appear as directed.

10        If you commit any offense whatsoever while released on

11   your bond pending sentence, then in addition to any sentence

12   I may impose upon you for your conviction here today, in

13   addition to any sentence for that offense, which the law

14   provides, I must impose an additional sentence.

15        If you commit a felony, I might sentence you to an

16   additional term of ten years.  So, I would ask you, and I

17   believe that would be a consecutive penalty, to simply do

18   what have you done heretofore, Ms. Cochran, and that is

19   comply to the letter with the conditions that have been

20   imposed and then we will see you back here on January 4th.

21        Is there anything else that the parties wish the Court

22   to take up at this time?

23             MS. ROBESON:  No, Your Honor.

24             MR. JOHNSON:  No, Your Honor.  Thank you.

25             THE COURT:  Thank you.  The Court is in recess.

1          (Proceedings concluded at 11:54 a.m., September 21,

2     2020.)

3

4

5     CERTIFICATION:

6          I, Ayme A. Cochran, Official Court Reporter, certify

7     that the foregoing is a correct transcript from the record

8     of proceedings in the matter of United States of America,

9     Plaintiff v. Natalie P. Cochran, Defendant, Criminal Action

10    No. 5:19-cr-00247, as reported on September 21, 2020.

11

12    s/Ayme A. Cochran, RMR, CRR              October 14, 2020

13    Ayme A. Cochran, RMR, CRR                        DATE

14

15

16

17

18

19

20

21

22

23

24

25