```
             IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                         AT BECKLEY
_____x
                              :
UNITED STATES OF AMERICA,     :  Criminal Action
v.                            :  No.  5:19-cr-00247
NATALIE P. COCHRAN            :
and                           :
UNITED STATES OF AMERICA      :  Civil Action
v.                            :  No. 5:19-cv-00537
REAL PROPERTY SITUATED AT     :
433 4-H LAKE DRIVE, DANIELS,  :  Date:  August 26, 2022
RALEIGH COUNTY, WEST VIRGINIA :
together with all             :
improvements, fixtures, and   :
appurtenances thereon, and    :
all leases, rents, and        :
profits derived therefrom;    :
                              :
REAL PROPERTY SITUATED AT     :
219 N. EISENHOWER DRIVE,      :
BECKLEY, RALEIGH COUNTY, WEST :
VIRGINIA,                     :
together with all             :
improvements, fixtures, and   :
appurtenances thereon, and all:
leases, rents, and profits    :
derived therefrom             :
and                           :
REAL PROPERTY SITUATED AT 210 :
PARKWOOD DRIVE, BECKLEY,      :
RALEIGH COUNTY, WEST VIRGINIA :
together with all             :
improvements, fixtures, and   :
appurtenances thereon, and all:
leases, rents, and profits    :
derived therefrom             :
_____x
```

TRANSCRIPT OF MOTION HEARING HELD
BEFORE THE HONORABLE FRANK W. VOLK, JUDGE
UNITED STATES DISTRICT COURT
IN BECKLEY, WEST VIRGINIA

*Ayme A. Cochran, RMR, CRR (304) 347-3128*

```
APPEARANCES:
                         AUSA KATHLEEN ROBESON
                         AUSA JESSICA NATHAN
                         United States Attorney's Office
                         Suite 4000
                         300 Virginia Street East
                         Charleston, WV 25301

                         BRIAN R. BLICKENSTAFF, ESQ.
                         Turner & Johns
                         808 Greenbrier Street
                         Charleston, WV 25311

                         ZACHARY JAMES ROSENCRANCE, ESQ.
                         Bowles Rice
                         P. O. Box 1386
                         Charleston, WV 25325-1386

                         DANIEL BURNS, ESQ.
                         Pullin Fowler Flanagan Brown &
                         Poe
                         252 George Street
                         Beckley, WV 25801

                         JOHN A. CARR, ESQ.
                         Suite 209
                         179 Summers Street
                         Charleston, WV 25301

Probation Officer:       Jeff Gwinn


Court Reporter:          Ayme Cochran, RMR, CRR

Proceedings recorded by mechanical stenography;
transcript produced by computer.
```

1        PROCEEDINGS had before The Honorable Frank W. Volk,
2   Judge, United States District Court, Southern District of
3   West Virginia, in Beckley, West Virginia, on August 26,
4   2022, at 10:14 a.m., as follows:
5            THE COURT:  We're here this morning in the Cochran
6   matter, pardon me, criminal action 5:19-247 and civil action
7   number 5:19-537.
8        I'd ask counsel to please note their appearances for
9   the record.
10           MS. ROBESON:  Kathleen Robeson and Jessica Nathan
11  on behalf of the United States.
12           MR. BURNS:  Daniel Burns for Larry Jessup, Your
13  Honor.
14           MR. ROSENCRANCE:  Zak Rosencrance for First
15  Community Bank.
16           MR. BLICKENSTAFF:  Brian Blickenstaff for Robert
17  L. Johns, Chapter 7 Trustee.
18           MR. CARR:  John Carr on behalf of the two minor
19  children.  I have been appointed as guardian ad litem.
20           THE COURT:  Who is current counsel for Ms.
21  Cochran, Mr. Schles?
22           MS. ROBESON:  That's what I believe, Your Honor.
23           THE COURT:  I don't see him in the courtroom.
24  Does anyone know Mr. Schles' whereabouts?  Has he ben
25  previously excused?  Is his appearance necessary?  In other

```
1    words, has the defendant abandoned all right, title and
2    interest to the property?
3              MS. ROBESON:  She already has, Your Honor, so I
4    don't believe his appearance is necessary.
5              THE COURT:  Does anyone wish to be heard on that
6    matter?
7         Understood.
8         Well, I have read the parties' joint motion to settle.
9    As you know, the Court invited comments and I've read the
10   written comments of Mr. Bailey, Ms. McCall, Tom Miller,
11   Teddy Gray and Chris Davis.  And then, also, Donna Bolt, who
12   I believe the Court has heard in person on at least one
13   occasion, and I note that there are a number of individuals
14   in the courtroom this morning.
15        Now, I have some questions of counsel.  First of all,
16   the proceedings in the Bankruptcy Court, did Judge Black
17   authorize the sale?
18             MS. ROBESON:  I will defer to Mr. Blickenstaff,
19   Your Honor, but I do not believe he has yet.
20             THE COURT:  Thank you.
21             MR. BLICKENSTAFF:  Your Honor, we were waiting on
22   this Court to make a determination based on our joint
23   motion, but the joint motion contemplating a motion to sell
24   363 free and clear of encumbrances if this Court would allow
25   the sale to go forward.
```

1    THE COURT: So, you would still need to go back
2  before Judge Black if you receive this Court's authorization
3  for the private sale; is that correct?
4    MR. BLICKENSTAFF: That's correct, Your Honor.
5    THE COURT: Does anyone else wish to weigh in on
6  that matter?
7    Very good.
8    I suppose my biggest question is why we're not
9  proceeding with a public sale and an auction process.
10    I will invite you to share your thoughts on that, Ms.
11  Robeson.
12    MS. ROBESON: Yes, Your Honor. I believe that
13  this sale is in the best interest of the Government and all
14  the victims because this is the way to maximize our return
15  on the property. As this Court knows, the mortgage is
16  increasing daily. We're not receiving adequate protection
17  payments from Mr. Jessup or anyone else. So, this debt is
18  growing and growing.
19    Moreover, Mr. Jessup, if this sale goes through, has
20  agreed to dismiss his other claims as to the other parts of
21  the property, which includes the bank account, as well as
22  the Shelby Cobra. The dismissal of those claims is very
23  valuable to the Government because that would allow the
24  final forfeiture order as to these items to move forward and
25  for us to disburse the funds ultimately to the victims

1  through the restoration process.
2       Furthermore, the interests of the minor children, while
3  the Government doesn't necessarily concede that they do have
4  an ownership interest in the property, I at least understand
5  they have standing and have a very viable claim and this
6  would dispose of that claim because, if it's not, it could
7  potentially take us years to figure out what their interest
8  is and I don't see how the property can be sold while they
9  still have a colorable interest in the property because I
10 certainly don't think that they would agree to the sale of
11 such property.  And so, I don't see how an interlocutory
12 sale could move forward in the forfeiture world, Your Honor.
13         THE COURT:  Understood.
14      Any reaction, counsel?
15         MR. BURNS:  No, Your Honor.  Thank you.
16         THE COURT:  Mr. Rosencrance?
17         MR. ROSENCRANCE:  Yes, Your Honor.  I just want to
18 note that this process is still going to have to go through
19 a 363 sale where the sale terms are going to go out on
20 notice and be subject to upset bids.  So, the victims or
21 anyone else that would want to bid on this property is going
22 to have the opportunity to do that.
23         THE COURT:  But let me ask you, Mr. Rosencrance,
24 what about the wider community of potential buyers?
25         MR. ROSENCRANCE:  Yes, Your Honor.  Under 28 U. S.

```
1    C. 2001 there is a publication requirement, ten days in the
2    newspaper, so it will be publicized in the newspaper for ten
3    days in order to comply with that statute.
4              THE COURT:  But if we have upset bidders come in
5    in 363, the 363 process, is it not the case that Judge Black
6    could expeditiously resolve the claims of the children and
7    overcome those claims if otherwise appropriate under the
8    statute; in other words, a free and clear sale?
9              MR. ROSENCRANCE:  I think that would be a
10   possibility, yes, Your Honor.
11             THE COURT:  Anything else?
12             MR. ROSENCRANCE:  Nothing from me.  Thank you.
13             THE COURT:  Mr. Blickenstaff?
14             MR. BLICKENSTAFF:  No, Your Honor, just that the
15   trustee would be prepared, as in the normal course in a 363
16   sale, that if he receives an upset bid he would then
17   basically conduct a -- an auction at that point in time, set
18   a date and time for interested parties to come in and make
19   any upset bids, and sell, of course, the property to the
20   highest bidder at that time.
21             THE COURT:  Would that auction process be widely
22   disseminated to individuals who may not even now know of the
23   property's availability?
24             MR. BLICKENSTAFF:  I believe that what would end
25   up happening in that case would be that the trustee would
```

1  set a date and time for that auction to occur. I guess it's
2  possible that we could modify the notice requirement that
3  goes out into the mail that if upset bids are received that
4  an auction will occur on such date and time so that we could
5  basically cover that and disseminate it to the wider
6  population.
7           THE COURT: Mr. Rosencrance?
8           MR. ROSENCRANCE: Yes, Your Honor. I think that
9  potentially an option we could explore would be to market
10 the property through Joe R. Pyle or another auctioneer that
11 has a wide audience. Perhaps that would allay some of the
12 Court's concerns in regard to marketing the property.
13          THE COURT: And it's not necessary in that
14 situation to pay a realtor's commission; is that the case?
15          MR. ROSENCRANCE: That would be correct. Your
16 Honor, my --
17          THE COURT: Would Mr. Pyle take a percentage of
18 the sale?
19          MR. ROSENCRANCE: Typically with my experience
20 with Mr. Pyle is that there is a ten-percent buyer's premium
21 on top of the sale price. That's -- that's their typical
22 arrangement. That would be something we would need to
23 discuss.
24          THE COURT: So, that's something that Mr. Pyle
25 would address with the buyer? It's not something that would

1 come out of the proceeds of the sale?
2       MR. ROSENCRANCE: That's correct, Your Honor.
3       THE COURT: Understood.
4 From the United States' perspective what is the
5 strength of the claim, other claims that Mr. Jessup has,
6 that will be disposed of by virtue of this resolution?
7       MS. ROBESON: Your Honor, I do not believe he has
8 a strong claim to the bank account, quite frankly.
9 As to the Cobra, I also do not believe he has a strong
10 claim. However, the Shelby Cobra is very expensive to store
11 and so, the longer it takes -- it's like the mortgage. The
12 longer it takes to decide the claim the more money that we
13 are losing in that asset that we're able to distribute to
14 the victims.
15       THE COURT: And who has primary responsibility for
16 the adjudication of that claim? Is it something that goes
17 before Judge Black first or is it entirely in this Court's
18 jurisdiction?
19       MS. ROBESON: I believe it's entirely in this
20 Court's jurisdiction, Your Honor.
21       THE COURT: Mr. Blickenstaff, do you differ?
22       MR. BLICKENSTAFF: I'm sorry, Your Honor. I
23 didn't quite hear that comment. I'm sorry.
24       THE COURT: The Shelby, is it this Court or Judge
25 Black that will be making the decision on any claims to that

*Ayme A. Cochran, RMR, CRR (304) 347-3128*

1 vehicle?

2 MR. BLICKENSTAFF: According to the coordination
3 agreement that we have worked out with the United States
4 Attorney's Office and if it is approved by this Court then
5 it would be this Court that would dispose of the Shelby.

6 THE COURT: Well, I'm not sure you can divest a
7 bankruptcy court of jurisdiction by agreement if it
8 otherwise has charge of that asset. So, what's everyone's
9 position on that, either you or Mr. Rosencrance?

10 MR. ROSENCRANCE: Your Honor, I would just note
11 that the lien was released sometime ago. The bank doesn't
12 have any interest in this particular vehicle.

13 THE COURT: Is there any other interested party
14 besides Mr. Jessup or his family that would have interest?

15 MS. ROBESON: No, Your Honor.

16 THE COURT: I suppose that might even be one of
17 the things that needs to be adjudicated based on this claim,
18 or not?

19 MS. ROBESON: I'm sorry, Your Honor. I think I
20 understand your question, but if I don't, please correct me.
21 We do need to adjudicate this claim, but after that, I think
22 that's all. It would be finally forfeited.

23 THE COURT: Understood.

24 Does anyone wish to be further heard or anything
25 related to the proposal before the Court or any other

1    collateral matter?
2           MR. ROSENCRANCE: Your Honor, I have one other
3    thing. Under the statute, 28 U. S. C. 2001, it appears that
4    three appraisals are necessary. So, I would contemplate the
5    parties' obtaining those three appraisals during the
6    noticing process and then we would come back to this Court
7    for a confirmation hearing on a potential order approving
8    sale.
9           THE COURT: Understood.
10       Anything further?
11          MS. ROBESON: Yes, Your Honor. The United States'
12   position, while -- while I understand the Court wishes to
13   hear from the victims and I certainly agree that these
14   people are victims and we take their rights very seriously,
15   this process for forfeiture is not something that these
16   victims have standing in, Your Honor, and we can brief the
17   issue if you would like. They have a restitution order
18   which recognizes their losses. That is still standing.
19   Nothing is going to change that.
20      Forfeiture is regarding ownership of the property and
21   these individuals do not have an ownership in these specific
22   pieces of property, Your Honor, and -- oh, go ahead, Your
23   Honor.
24          THE COURT: What happens to the money from the
25   sale?

1       MS. ROBESON: Yes, Your Honor. The United States
2  contemplates applying it to the restitution. Ultimately,
3  that goes through a process called Restoration, which is
4  controlled by the Executive Branch. And so, we do
5  ultimately plan to give the money to the victims. However,
6  the actual process of the forfeiture is not something that
7  the victims have standing in, the United States would posit.
8       THE COURT: The victims have at least an inchoate
9  right to hope for and seek the highest price to be gotten
10 for the asset.
11      MS. ROBESON: I think that's certainly -- I would
12 say that's common sense and, of course, we would like that.
13 However, the victims have no ownership rights to these
14 specific assets and --
15      THE COURT: That's obviously true.
16      MS. ROBESON: Thank you, Your Honor. And to be
17 able to fulfill our duties under the law we need to be able
18 to process forfeitures so that, hopefully, we can give the
19 victims the most money possible.
20      THE COURT: Understood. But, as you know, under
21 the statute it's the Court's responsibility about how best
22 to go about that.
23    Is there anything else that needs to be stated?
24    Very good. I am ready to rule.
25    I would say that the Court cannot under the

circumstances authorize the private sale approach. I'm not satisfied that given the fluidity of the market and the rapid developments that are taking place therein that the sale is qualified under that private sale feature of the statute. And so, it's the Court's belief that an auction or something of that nature does need to take place. I will leave that issue in the first instance to Judge Black unless the parties come back to me for some reason on that, but it seems to me very sensible, it may not be something that Judge Black or the parties wish to do, but Mr. Jessup has a bid out there. If it is a fair bid in the parties' estimation maybe he is treated as a stalking horse bidder and we see what comes in thereafter. So then, we hopefully at least know that the property will bring that amount of money and perhaps more.

But the only matter that's before Court right now is the authorization of a private sale and I will not be authorizing that. And I will leave the parties to further consultation.

What I intend to do is to retire this case to the inactive docket pending further discussions and actions in the Bankruptcy Court and then, if counsel need to return to this court for action, I will re-open the proceeding and restore it to the active docket and take whatever steps are necessary or required or authorized by law.

1 Anything further?

2 MS. ROBESON: Yes, Your Honor. The United States
3 would move for a Coordination Agreement to be entered by
4 this Court and, also, Your Honor, I -- I am sorry if I am
5 not understanding the Bankruptcy Court's jurisdiction
6 appropriately, but I believe this Court must rule on Mr.
7 Jessup's claim.

8 THE COURT: I have. I have ruled on Mr. Jessup's
9 request for a private sale.

10 MS. ROBESON: His claim as to the Shelby Cobra and
11 as well as to the bank account, would -- should I file a
12 motion to get this in front of you again, Your Honor, if you
13 retire this to the inactive docket?

14 THE COURT: Well, I think it may be well to leave
15 those claims retired to the inactive docket pending the
16 adjudication of this much larger controversy involving the
17 real property because that may have a significant impact on
18 the final outcome. And so, we're going to sequence things
19 in that order.

20 Whenever these matters have been resolved in Bankruptcy
21 Court as to the real property then I would invite you to
22 seek that relief.

23 I understand you have storage costs. That might be an
24 incentive to more quickly resolve this matter in Bankruptcy
25 Court. I do have some experience with 363 sales, as you

1 know, and also auctions. I don't think it's something that
2 Judge Black will keep you waiting on. And so, we'll
3 sequence things, again, in that fashion.
4     Anything further?
5     MS. ROBESON: And as to the Coordination
6 Agreement, Your Honor, are we also waiting for that for this
7 property to be resolved because the sale of -- or just any
8 sale of any of the properties is contemplated by the
9 Coordination Agreement, Your Honor.
10     THE COURT: If the Coordination Agreement in any
11 way touches assets that are in the Bankruptcy Court, then I
12 want first for that agreement to be presented to Judge Black
13 and have his approval.
14     If you present it to Judge Black and he doesn't believe
15 it's necessary for his approval, then I would invite you to
16 re-submit it to me, and I will take it up at that time.
17     Anything further?
18     MS. ROBESON: No, Your Honor.
19     THE COURT: Thank you. Court is in recess.
20     (Proceedings concluded at 10:31 a.m., August 26, 2022.)
21
22 CERTIFICATION:
23     I, Ayme A. Cochran, Official Court Reporter, certify
24 that the foregoing is a correct transcript from the record
25 of proceedings in the matter of United States of America v.

*Ayme A. Cochran, RMR, CRR (304) 347-3128*

```
 1   Natalie P. Cochran, et al., Criminal Action No.
 2   5:19-cr-00247 and Civil Action No. 5:19-cv-00537, as
 3   reported on August 26, 2022.
 4
 5   s/Ayme A. Cochran, RMR, CRR              September 26, 2022
 6   Ayme A. Cochran, RMR, CRR                          DATE
```