# Exhibit C



# United States Department of Justice

United States Attorney
Southern District of West Virginia

Robert C. Byrd United States Courthouse
300 Virginia Street, East
Suite 4000
Charleston, WV 25301
1-800-659-8726

Mailing Address
Post Office Box 1713
Charleston, WV 25326
304-345-2200
FAX: 304-347-5104



FILED
SEP 24 2020
RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

September 8, 2020

Rhett Johnson
Assistant Federal Public Defender
300 Virginia Street, East
Charleston, West Virginia 25301

   Re:  United States v. Natalie P. Cochran
       Criminal No. 5:19-cr-00247 (USDC SDWV)

Dear Mr. Johnson:

  This will confirm our conversations with regard to your client, Natalie P. Cochran (hereinafter "Ms. Cochran"). As a result of these conversations, it is agreed by and between the United States and Ms. Cochran as follows:

  1.  **PENDING CHARGES**. Ms. Cochran is charged in a 26-count indictment as follows:

   (a)  Counts One through Eleven charge Ms. Cochran with a violation of 18 U.S.C. § 1343 (Wire Fraud);

   (b)  Count Twelve charges Ms. Cochran with a violation of 18 U.S.C. § 1344 (Bank Fraud);

   (c)  Counts Thirteen through Sixteen charge Ms. Cochran with a violation of 18 U.S.C. § 1028A (Aggravated Identity Theft);

   (d)  Count Seventeen charges Ms. Cochran with a violation of 18 U.S.C. § 1343 (Wire Fraud);

   (e)  Counts Eighteen through Twenty-Four charge Ms. Cochran with a violation of 18 U.S.C. § 1957 (Money Laundering);

*NPC*
Defendant's Initials

Rhett Johnson
September 8, 2020                                                 Re: Natalie P. Cochran
Page 2

    (f)     Count Twenty-Five charges Ms. Cochran with a violation of 18 U.S.C. § 157(2) (Bankruptcy Fraud); and

    (g)     Count Twenty-Six charges Ms. Cochran with a violation of 18 U.S.C. § 152(2) (False Oath in a Bankruptcy Proceeding).

    2.     **RESOLUTION OF CHARGES**. Ms. Cochran will plead guilty to Counts Six and Eighteen of said indictment, which charges her with a violation of 18 U.S.C. § 1343 (Wire Fraud) and 18 U.S.C. § 1957 (Unlawful Monetary Transaction). Following final disposition, the United States will move the Court to dismiss Counts One through Five, Counts Seven through Seventeen, and Counts Nineteen through Twenty-Six in Criminal No. 5:19-cr-00247.

    3.     **MAXIMUM POTENTIAL PENALTY**. The maximum penalty to which Ms. Cochran will be exposed by virtue of this guilty plea is as follows:

Count Six – 18 U.S.C. § 1343:

    (a)     Imprisonment for a period of up to 20 years;

    (b)     A fine of $250,000, or twice the gross pecuniary gain or twice the gross pecuniary loss resulting from defendant's conduct, whichever is greater;

    (c)     A term of supervised release of 3 years;

    (d)     A mandatory special assessment of $100 pursuant to 18 U.S.C. § 3013; and

    (e)     An order of restitution pursuant to 18 U.S.C. §§ 3663 and 3664, or as otherwise set forth in this plea agreement.

Count Eighteen – 18 U.S.C. § 1957:

    (a)     Imprisonment for a period of up to 10 years;

    (b)     A fine of $250,000, or twice the gross pecuniary gain or twice the gross pecuniary loss resulting from defendant's conduct, whichever is greater;

    (c)     A term of supervised release of 3 years;

*NPC*
Defendant's Initials

Rhett Johnson
September 8, 2020
Page 3

Re: Natalie P. Cochran

    (d)    A mandatory special assessment of $100 pursuant to 18 U.S.C. § 3013; and

    (e)    An order of restitution pursuant to 18 U.S.C. §§ 3663 and 3664, or as otherwise set forth in this plea agreement.

Total Combined Maximum Penalty:[1]

    (a)    Imprisonment for a period of up to 30 years

    (b)    A fine of $500,000, or twice the gross pecuniary gain or twice the gross pecuniary loss resulting from defendant's conduct, whichever is greater;

    (c)    A term of supervised release of 3 years;

    (d)    A mandatory special assessment of $200 pursuant to 18 U.S.C. § 3013; and

    (e)    An order of restitution pursuant to 18 U.S.C. §§ 3663 and 3664, or as otherwise set forth in this plea agreement.

    4.    **SPECIAL ASSESSMENT.** Prior to the entry of a plea pursuant to this plea agreement, Ms. Cochran will tender a check or money order to the Clerk of the United States District Court for $200, which check or money order shall indicate on its face the name of defendant and the case number. The sum received by the Clerk will be applied toward the special assessment imposed by the Court at sentencing. Ms. Cochran will obtain a receipt of payment from the Clerk and will tender a copy of such receipt to the United States, to be filed with the Court as an attachment to this plea agreement. If Ms. Cochran fails to provide proof of payment of the special assessment prior to or at the plea proceeding, the United States will have the right to void this plea agreement. In the event this plea agreement becomes void after payment of the special assessment, such sum shall be promptly returned to Ms. Cochran.

    5.    **RESTITUTION.** Notwithstanding the offense of conviction, Ms. Cochran agrees that she owes restitution in the amount of $2,564,063.33 less the amount of money returned to the victims which the Court decides to credit against her restitution debt, and agrees to pay such

---

[1] This is a statutory maximum, but if the Court accepts the plea, as set forth in Paragraph 13, the maximum is 135 months imprisonment.

NPC<br>Defendant's<br>Initials

Rhett Johnson
September 8, 2020  Re: Natalie P. Cochran
Page 4

restitution, with interest as allowed by law, to the fullest extent financially feasible. In aid of restitution, Ms. Cochran further agrees as follows:

(a) Ms. Cochran agrees to fully assist the United States in identifying and locating any assets to be applied toward restitution and to give signed, sworn statements and testimony concerning assets upon request of the United States.

(b) Ms. Cochran will fully complete and execute, under oath, a Financial Statement and a Release of Financial Information on forms supplied by the United States and will return these completed forms to counsel for the United States within seven calendar days from the date of the signing of this plea agreement.

(c) Ms. Cochran agrees not to dispose of, transfer or otherwise encumber any real or personal property which she currently owns or in which she holds an interest.

(d) Ms. Cochran agrees to fully cooperate with the United States in the liquidation of assets to be applied towards restitution, to execute any and all documents necessary to transfer title of any assets available to satisfy restitution, to release any and all right, title and interest she may have in and to such property, and waives her right to exemptions under the Federal Debt Collection Procedures Act upon levy against and the sale of any such property.

(e) Ms. Cochran agrees not to appeal any order of the District Court imposing restitution unless the amount of restitution imposed exceeds the amount set forth in this plea agreement. However, nothing in this provision is intended to preclude the Court from ordering Ms. Cochran to pay a greater or lesser sum of restitution in accordance with law.

6. **FORFEITURE.** Ms. Cochran hereby agrees as follows:

(a) To forfeit to the United States any and all property in Ms. Cochran's possession or under her control which constitutes proceeds of or is derived from the proceeds of the offenses to which Ms. Cochran is agreeing to plead guilty, and is set forth in this indictment, namely violations of 18 U.S.C. §§ 1343 and 1957. Ms. Cochran agrees that she has earned over $2,752,482.93 in illicit proceeds from her fraudulent activities. Ms. Cochran further agrees not to contest the forfeiture of the property listed in in the indictment as well as a forfeiture money judgment in the amount of $1,000,000, such amount which constitutes a portion of the proceeds of the

_NPC_
Defendant's Initials

Rhett Johnson
September 8, 2020                                                Re: Natalie P. Cochran
Page 5

violation set forth in the attached indictment, and the property seized during the course of the investigation. Ms. Cochran specifically agrees to forfeit her interest in the following pieces of a property:

a. $44,935.01 check for all funds within the First Community Bank account ending in 6739 held in the name of Tactical Solutions Group LLC;

b. a 1965 Shelby Cobra Replica, VIN: AE9BMAAH8H1MT1098, seized during the investigation;

c. a 2017 Yamaha Motorcycle, VIN: 9C6CE22Y5H00, seized during the investigation;

d. a 2014 Big TEX Dump Trailer, VIN: 16VDX122XE5068547, seized during the investigation;

e. a 2017 Yamaha Motorcycle TTR230H, VIN: 9C6CG28Y0H0016654, seized during the investigation;

f. a 2018 Polaris Model 218VFE92BU, VIN: 3NSVFE92XJF410893, seized during the investigation;

g. a 6x14 AFG BigT trailer, VIN: 5JTAU1419DA044992, seized during the investigation;

h. a Yamaha Timberwolf ATV, VIN: 810E-096235, seized during the investigation;

i. a 2017 Honda Rubicon ATV, VIN:1HFTE4524H4201152, seized during the investigation;

j. two diamond hoop earrings seized during the investigation;

k. a Toyota 4Runner, VIN: JTEBU5JR8J5609828;

l. a 2008 Dodge Ram 2500, VIN: 3D7KS28A28G133447, seized during the investigation

*NPC*
_____
Defendant's
Initials

Rhett Johnson
September 8, 2020
Page 6

Re: Natalie P. Cochran

      m. a 2014 Sundown Rancher trailer, VIN: 13SKJ2828F1KA9730;

      n. the real property located at 219 N Eisenhower Drive, Beckley, West Virginia 25801; and

      o. the real property located at 210 Parkwood Drive, Beckley, West Virginia 25801.

(b) As part of a global resolution of the above-captioned case and the parallel civil forfeiture action, United States v. Real Property Situated at 433 4-H Lake Drive, Daniels Raleigh County, West Virginia, together with all improvements, fixtures and appurtenances thereon, and all leases, rents and profits derived therefrom et al., Civil Action No. 5:19-cv-00537, the United States agrees not to pursue further forfeiture proceedings against 433 4-H Lake Drive, Daniels, West Virginia, in either the civil or criminal case, and release its lis pendens on the property if Ms. Cochran will forfeit $91,837.43 (the amount of fraud proceeds which were spent on mortgage payments and improvements to the residence) in U.S. Currency in lieu of Ms. Cochran forfeiting her interest in 433 4-H Lake Drive. Ms. Cochran will resolve any claims which third-parties or lien holders, have to towards 433 4-H Lake Drive, Daniels Raleigh County, West Virginia, independently.

(c) To withdrawal any civil and administrative forfeiture claims to the property listed in the indictment.

(d) To assist the United States and its agents in identifying all such property, regardless of its location and the manner in which it is titled. Any such identified property deemed forfeitable by the United States will then be forfeited, pursuant to 18 U.S.C. §§ 981, 982 or 28 U.S.C. § 2461, in either an administrative or judicial forfeiture action;

(c) To fully complete and execute, under oath, a Financial Affidavit in a form supplied by the United States and to return to counsel for the United States the completed Affidavit within seven calendar days from the date of signing this plea agreement;

(d) To provide sworn testimony and to execute any documents deemed necessary by the United States to effectuate the forfeiture and to transfer title to the said property to the United States; and

                                                                                                                               Defendant's
                                                                                                                               Initials

Rhett Johnson
September 8, 2020                                               Re: Natalie P. Cochran
Page 7

      (e)       To waive any defenses to this criminal action, or to any related administrative or judicial forfeiture action, based in whole or in part on the Excessive Fines Clause of the Eighth Amendment to the Constitution, or the holding or principles set forth in United States v. Alexander, 509 U.S. 544 (1993); United States v. Bajakajian, 524 U.S. 321 (1998); United States v. Austin, 509 U.S. 602 (1993); and their progeny.

       7.       **PAYMENT OF MONETARY PENALTIES.** Ms. Cochran authorizes the Financial Litigation Unit in the United States Attorney's Office to obtain a credit report from any major credit reporting agency prior to sentencing in order to assess her financial condition for sentencing purposes. Ms. Cochran agrees not to object to the District Court ordering all monetary penalties (including the special assessment, fine, court costs, and any restitution that does not exceed the amount set forth in this plea agreement) to be due and payable in full immediately and subject to immediate enforcement by the United States. So long as the monetary penalties are ordered to be due and payable in full immediately, Ms. Cochran further agrees not to object to the District Court imposing any schedule of payments as merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment.

Ms. Cochran authorizes the United States, through the Financial Litigation Unit, to submit any unpaid criminal monetary penalty to the United States Treasury for offset in accordance with the Treasury Offset Program, regardless of the defendant's payment status or history at that time.

In addition to any payment ordered by the Court, Ms. Cochran shall pay all monies received from any source other than earned income, including but not limited to, lottery winnings, gambling proceeds, judgments, inheritances, and tax refunds, toward the court ordered restitution or fine.

Ms. Cochran agrees that if she retains counsel or has appointed counsel in response to the United States' efforts to collect any monetary penalty, she shall immediately notify the United States Attorney's Office, Attention: Financial Litigation Unit, P.O. Box 1713, Charleston, West Virginia 25326-1713, in writing and shall instruct her attorney to notify FLU immediately of her representation.

       8.       **COOPERATION**. Ms. Cochran will be forthright and truthful with this office and other law enforcement agencies with regard to all inquiries made pursuant to this agreement, and will give signed, sworn statements and grand jury and trial testimony upon request of the

                                                                                    *MPC*
                                                                       Defendant's
                                                                          Initials

Rhett Johnson
September 8, 2020
Page 8

Re: Natalie P. Cochran

United States. In complying with this provision, Ms. Cochran may have counsel present except when appearing before a grand jury.

9. **USE IMMUNITY.** Unless this agreement becomes void due to a violation of any of its terms by Ms. Cochran, and except as expressly provided for in paragraph 11 below, nothing contained in any statement or testimony provided by her pursuant to this agreement, or any evidence developed therefrom, will be used against her, directly or indirectly, in any further criminal prosecutions or in determining the applicable guideline range under the Federal Sentencing Guidelines.

10. **LIMITATIONS ON IMMUNITY.** Nothing contained in this agreement restricts the use of information obtained by the United States from an independent, legitimate source, separate and apart from any information and testimony provided pursuant to this agreement, in determining the applicable guideline range or in prosecuting Ms. Cochran for any violations of federal or state laws. The United States reserves the right to prosecute Ms. Cochran for perjury or false statement if such a situation should occur pursuant to this agreement.

11. **STIPULATION OF FACTS AND WAIVER OF FED. R. EVID. 410.** The United States and Ms. Cochran stipulate and agree that the facts comprising the offense of conviction and relevant conduct, however, the Stipulation of Facts does not include all relevant conduct. A copy of the "Stipulation of Facts," is attached hereto as "Plea Agreement Exhibit A."

Ms. Cochran agrees that if she withdraws from this agreement, or this agreement is voided as a result of a breach of its terms by her, and she is subsequently tried for her conduct alleged in the indictment, as more specifically described in the Stipulation of Facts, the United States may use and introduce the Stipulation of Facts in the United States case-in-chief, in cross-examination of Ms. Cochran or of any of her witnesses, or in rebuttal of any testimony introduced by her or on her behalf. Ms. Cochran knowingly and voluntarily waives, see United States v. Mezzanatto, 513 U.S. 196 (1995), any right she has pursuant to Fed. R. Evid. 410 that would prohibit such use of the Stipulation of Facts. If the Court does not accept the plea agreement through no fault of the defendant, or the Court declares the agreement void due to a breach of its terms by the United States, the Stipulation of Facts cannot be used by the United States.

The United States and Ms. Cochran understand and acknowledge that the Court is not bound by the Stipulation of Facts and that if some or all of the Stipulation of Facts is not accepted by the Court, the parties will not have the right to withdraw from the plea agreement.

12. **WAIVER OF APPEAL AND COLLATERAL ATTACK.** Ms. Cochran and

NPC
_____
Defendant's
Initials

Rhett Johnson
September 8, 2020
Page 9

Re: Natalie P. Cochran

the United States both knowingly and voluntarily waive the right to seek appellate review of the conviction and of any sentence of imprisonment, fine, or term of supervised release imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever including any ground set forth in 18 U.S.C. § 3742(a), except that both parties may appeal a sentence of imprisonment that deviates from the sentencing range agreed upon pursuant to Fed. R. Crim. P. 11 (c) (1) (C) as set forth in Paragraph 13 below. Ms. Cochran also knowingly and voluntarily waives any right to seek appellate review of any claim or argument that (1) the statute of conviction (18 U.S.C. § 1343 and 18 U.S.C. § 1957) is unconstitutional, and (2) Ms. Cochran's conduct set forth in the Stipulation of Facts (Plea Agreement Exhibit B) does not fall within the scope of 18 U.S.C. § 1343 and 18 U.S.C. § 1957.

Ms. Cochran also knowingly and voluntarily waives the right to challenge her guilty plea and conviction resulting from this plea agreement, and any sentence imposed for the conviction, in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255.

The waivers noted above shall not apply to a post-conviction collateral attack or direct appeal based on a claim of ineffective assistance of counsel.

13. **RULE 11 (c) (1) (C) AGREEMENT**. Pursuant to Rule 11 (c) (1) (C) of the Federal Rules of Criminal Procedure, the United States and Ms. Cochran agree that a sentence of imprisonment of at least 37 months in prison and no more than 135 months in prison is the appropriate disposition of this case. Ms. Cochran understands that this agreement pursuant to Fed. R. Crim. P. 11 (c) (1) (C) is not binding on the District Court unless and until the District Court accepts this plea agreement. If the Court refuses to accept this plea agreement, Ms. Cochran has the right to void this agreement and may withdraw her guilty plea.

14. **WAIVER OF FOIA AND PRIVACY RIGHT**. Ms. Cochran knowingly and voluntarily waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without any limitation any records that may be sought under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a, following final disposition.

15. **FINAL DISPOSITION**. The matter of sentencing is within the sole discretion of the Court. The United States has made no representations or promises as to a specific sentence. The United States reserves the right to:

(a) Inform the Probation Office and the Court of all relevant facts and conduct;

*NPC*
Defendant's
Initials

Rhett Johnson  
September 8, 2020                                            Re: Natalie P. Cochran  
Page 10

(b)    Present evidence and argument relevant to the factors enumerated in 18 U.S.C. § 3553(a);

(c)    Respond to questions raised by the Court;

(d)    Correct inaccuracies or inadequacies in the presentence report;

(e)    Respond to statements made to the Court by or on behalf of Ms. Cochran;

(f)    Advise the Court concerning the nature and extent of Ms. Cochran's cooperation; and

(g)    Address the Court regarding the issue of Ms. Cochran's acceptance of responsibility.

16.    **VOIDING OF AGREEMENT.** If either the United States or Ms. Cochran violates the terms of this agreement, the other party will have the right to void this agreement. If the Court refuses to accept this agreement, it shall be void.

17.    **ENTIRETY OF AGREEMENT.** This written agreement constitutes the entire agreement between the United States and Ms. Cochran in this matter. There are no agreements, understandings or recommendations as to any other pending or future charges against Ms. Cochran in any Court other than the United States District Court for the Southern District of West Virginia.

Acknowledged and agreed to on behalf of the United States:

                                             MICHAEL B. STUART  
                                             United States Attorney

                             By: _____  
                                             Kathleen Robeson  
                                             Assistant United States Attorney

KER/dgh

                                                                          NPC  
                                                                  _____  
                                                                          Defendant's  
                                                                          Initials

Rhett Johnson
September 8, 2020
Page 11

Re: Natalie P. Cochran

I hereby acknowledge by my initials at the bottom of each of the foregoing pages and by my signature on the last page of this 11-page agreement that I have read and carefully discussed every part of it with my attorney, that I understand the terms of this agreement, and that I voluntarily agree to those terms and conditions set forth in the agreement. I further acknowledge that my attorney has advised me of my rights, possible defenses, the Sentencing Guideline provisions, and the consequences of entering into this agreement, that no promises or inducements have been made to me other than those in this agreement, and that no one has threatened me or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

_____    9/8/2020
Natalie P. Cochran                 Date Signed
Defendant

_____    9/8/2020
Rhett Johnson                      Date Signed
Counsel for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY

UNITED STATES OF AMERICA

v.                                              CRIMINAL NO. 5:19-cr-00247

NATALIE P. COCHRAN

## STIPULATION OF FACTS

The United States and Natalie P. Cochran (hereinafter "defendant" and "I" and "my") stipulate and agree that the facts comprising the offenses of conviction (Counts Six and Eighteen in the Indictment in Criminal No. 5:19-cr-00247), and some, but not all of the relevant conduct for those offenses include the following:[1]

### Background

From at least June 2017 until approximately August 22, 2019, I resided in Daniels, Raleigh County, West Virginia, which I know is in the Southern District of West Virginia. During this period, my husband and I owned and operated Technology Management Solutions LLC ("TMS") and Tactical Solutions Group LLC ("TSG"). TMS and TSG were West Virginia corporations located in Beckley, Raleigh County, West Virginia which I know is also within the Southern District of West Virginia.

TMS was an information technology company that provided technical and technology consulting services, and TSG was a wholesale merchant and provider of durable goods. While TMS and TSG were registered federal government contractors, I know that neither TSG nor TMS ever obtained a federal government contract. I offered various investment opportunities in or through TMS and TSG to my family, friends, and other members of the community.

### The Scheme to Defraud

From approximately June 2017 through at least August 22, 2019, I knowingly defrauded and obtained money and property from at least twelve individuals, one financial institution and several other companies. I knowingly made false representations about my companies' and my qualifications as experienced government contractors. I also fraudulently induced numerous people to invest in TMS and TSG, and in phony government contracts that I claimed had been awarded to me, TMS, and/or TSG. I made these false representations about the financial state of my companies, and stated that TSG, TMS and myself were experienced government contractors even though I knew that neither TSG nor TMS were ever awarded any federal government contracts and neither company ever fulfilled or received any payment under any ~~state~~ or federal government contracts.

---

[1] This Stipulation of Facts does not contain every fact known to defendant Natalie P. Cochran and to the United States concerning her involvement in the charges set forth in the Indictment and her relevant conduct.

**PLEA AGREEMENT EXHIBIT "A"**

Through my false and fraudulent misrepresentations, I induced at least eleven people to pay approximately $2.5 million for the purpose of investing in alleged government contracts that I falsely represented had been awarded to TSG and TMS. The investors paid TMS and TSG through personal checks, cashier's checks and wire transfers. As charged in Count Six of the Indictment, I fraudulently induced an investor to send me $511,920 through a wire transfer. This wire travelled through interstate commerce as it traveled through Winston-Salem, North Carolina before being deposited in TSG's account held at or near Beckley, Raleigh County, West Virginia.

After receiving the investment funds, I failed to invest the investors' money as I promised. Instead, I transferred some or all of the investors' funds to my personal and business bank accounts and then used the money for personal purposes unrelated to the investments. I used investor funds to make numerous purchases over $10,000, including when I withdrew over $37,500 to purchase a 1965 Shelby Cobra, as charged in Count Eighteen. At least one of my investors suffered a financial hardship due to my fraud scheme.

In order to continue my fraudulent scheme, I also used some investors' funds to pay other investors a partial return on their investment. I knew this would cause investors to believe that their investments were real and not fraudulent.

Beginning in December 2018, I applied for and did receive lines of credit and loans from at least one bank by falsely reporting my businesses' income. I received over $250,000 from one bank as the result of my misrepresentations regarding my businesses. I also used some of these fraudulently obtained loan proceeds to make payments to investors in order to continue my fraud scheme.

Similarly, beginning in February 2018, I applied for and did receive cash advances from at least three finance companies by falsely representing that TSG was a government contractor and providing bank statements showing deposits of investor funds, which I fraudulently represented to be proceeds from my business sales. I also promised and pledged to the finance companies a portion of TSG's accounts receivables, which in fact consisted of investor funds, to secure the cash advances. I then used the cash advances from the finance companies to make payments to investors, again with the intent to deceive them into believing that their investments were real.

I also made false and fraudulent representations to investors via wire communication, about the status of their investments and TMS's and TSG's accounts receivable from the federal and state governments. I did this in order to conceal the true value of their investments and what I actually did with the investors' money.

I also provided false and fraudulent excuses for my delay in paying investors. For example, I falsely and fraudulently represented to investors that I could not make repayments to them because the government had not sent me the payments owed to me from my companies' contract work. I also blamed a government shut-down for a delay in receiving payments from the federal government, even though I knew that TSG and TSM were never awarded any federal government contracts, and not entitled to receive any federal government payments.

PLEA AGREEMENT EXHIBIT "A"

2

Stipulated and agreed to:

_____     9/8/2020
NATALIE P. COCHRAN                    Date
Defendant

_____     9/8/2020
RHETT JOHNSON                         Date
Counsel for Defendant

_____     9/8/2020
KATHLEEN ROBESON                      Date
Assistant United States Attorney