# Exhibit G

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# BECKLEY

UNITED STATES OF AMERICA

v.  CRIMINAL ACTION NO. 5:19-cr-00247

NATALIE P. COCHRAN

---

In re

| | |
|---|---|
| NATALIE P. COCHRAN, | BANKRUPTCY CASE NO. 19-50122 |
| Debtor. | Chapter 7 |

---

In re

| | |
|---|---|
| TACTICAL SOLUTIONS GROUP, LLC, | BANKRUPTCY CASE NO. 19-50192 |
| Debtor. | Chapter 7 |

---

In re

| | |
|---|---|
| TECHNOLOGY MANAGEMENT SOLUTIONS, LLC, | BANKRUPTCY CASE NO. 19-50193 |
| Debtor. | Chapter 7 |

**MOTION FOR THE DISTRICT COURT'S APPROVAL OF THE COORDINATION AGREEMENT BETWEEN THE UNITED STATES OF AMERICA AND TRUSTEE ROBERT L. JOHNS**

The United States of America, by and through the United States Attorney for the Southern District of West Virginia and Robert L. Johns, as Chapter 7 Trustee for Debtor Natalie Cochran, who is also the defendant in a criminal case within the Southern District, by and through counsel, have entered into a Coordination Agreement to dispose of defendant Natalie Cochran's assets. The

1

parties jointly submit the attached Coordination Agreement for the Court's approval. *See* Exhibit A.

AGREED AND CONSENTED TO:

| | |
|---|---|
| UNITED STATES ATTORNEY<br>WILLIAM S. THOMPSON | CHAPTER 7 TRUSTEE<br>ROBERT S. JOHNS |

| | |
|---|---|
| /s/ Kathleen Robeson<br>**KATHLEEN E. ROBESON**<br>U.S. ATTORNEY'S OFFICE<br>VA Bar No. 89526<br>300 Virginia Street, East<br>Room 4000<br>Charleston, WV 25301<br>Phone No: (304) 345-2200<br>Fax No: (304) 347-5104<br>Email: Kathleen.robeson@usdoj.gov<br>*Assistant United States Attorney* | /s/Brian Blickenstaff<br>**BRIAN R. BLICKENSTAFF, ESQ.**<br>TURNER & JOHNS, PLLC<br>WVSB No. 9449<br>808 Greenbrier Street<br>Charleston, WV 25311<br>Phone No: (304) 720-2300<br>Fax No: (304) 720-2311<br>E-mail: bblickenstaff@turnerjohns.com<br>*Counsel for Robert L. Johns,*<br>*Chapter 7 Trustee* |

# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY

UNITED STATES OF AMERICA

v.  CRIMINAL ACTION NO. 5:19-cr-00247

NATALIE P. COCHRAN

---

In re

NATALIE P. COCHRAN,   BANKRUPTCY CASE NO. 19-50122
      Debtor.   Chapter 7

---

In re

TACTICAL SOLUTIONS GROUP, LLC,   BANKRUPTCY CASE NO. 19-50192
      Debtor.   Chapter 7

---

In re

TECHNOLOGY MANAGEMENT   BANKRUPTCY CASE NO. 19-50193
SOLUTIONS, LLC,   Chapter 7
      Debtor.

## COORDINATION AGREEMENT AMONG THE UNITED STATES OF AMERICA AND TRUSTEE ROBERT L. JOHNS

The United States of America, by and through the United States Attorney for the Southern District of West Virginia ("the Government," the "United States" or "U.S.") and the United Robert L. Johns, as Chapter 7 Trustee for Debtor Natalie Cochran, who is also the defendant in a criminal case within the Southern District, by and through counsel, enter this Coordination and Settlement Agreement ("Agreement") and request the District Court for the

1

Southern District of West Virginia (the "District Court") and the Bankruptcy Court for the Southern District of West Virginia, Beckley Division ("the Bankruptcy Court"), enter separately filed Proposed Consent Orders that are consistent with this Agreement.

The Parties submit this Proposed Agreement to the District Court and the Bankruptcy Court for the purpose of completing an interlocutory sale on the real properties described below (the "Real Property") and personal property (the "Personal Property"), (collectively the "Subject Assets") which are subject to the criminal forfeiture which is part of the Defendant's criminal judgment and the Civil Forfeiture case in the Southern District of West Virginia and included in the Bankruptcy Estate in the Southern District of West Virginia.

As Ms. Cochran pleaded guilty and agreed to the forfeiture of the assets subject to the Coordination Agreement (the "Subject Assets") which are listed below through her plea agreement, she no longer retains any rights as to these properties nor the proceeds of the sale of these Subject Assets. First Community Bank, who is also creditor in the bankruptcy action as well, has filed a claim against the Real Property Situated at 433 4-H Lake Drive, Daniels, Raleigh County, West Virginia. Otherwise, no other claims filed alleging an interest in the Subject Real Properties. First Community Bank is a lienholder against the 433 4-H Lake Drive, Daniels, Raleigh County, West Virginia property and the Coordination Agreement would provide for the payment of that lien, as the Coordination Agreement seeks to have the 433 4-H Lake Drive, Daniels, Raleigh County, West Virginia property sold as provided for in the Motion for Interlocutory Sale filed on August 17, 2021, ECF Docket Entry 139.

I. The Assets Subject to this Coordination Agreement:
   a. Real Property

    ii.    Real property Situated at 433 4-H Lake Drive, Daniels, Raleigh County, West Virginia together with all improvements, fixtures and appurtenances thereon, and all leases, rents and profits derived therefrom;

    iii.    Real property Situated at 219 N. Eisenhower Drive, Beckley, Raleigh County, West Virginia together with all improvements, fixtures, and appurtenances thereon, and all leases, rents, and profits derived therefrom; and

    iv.    Real property Situated at 210 Parkwood Drive, Beckley, Raleigh County, West Virginia together with all improvements, fixtures, and appurtenances thereon, and all leases, rents, and profits derived therefrom.

b. Personal Property

    ii.    $44,935.01 check for all funds within the First Community Bank account ending in 6739 held in the name of Tactical Solutions Group LLC;

    iii.    1965 Shelby Cobra Replica, VIN: AE9BMAAH8H1MT1098;

    iv.    2017 Yamaha Motorcycle, VIN: 9C6CE22Y5H00;

    v.    2014 Big TEX Dump Trailer, VIN: 16VDX122XE5068547;

    vi.    2017 Yamaha Motorcycle TTR230H, VIN: 9C6CG28Y0H0016654;

    vii.    2018 Polaris Model 218VFE92BU, VIN: 3NSVFE92XJF410893;

    viii.    6x14 AFG BigT trailer, VIN: 5JTAU1419DA044992;

    ix.    Yamaha Timberwolf ATV, VIN: 810E-096235;

    x.    2017 Honda Rubicon ATV, VIN: 1HFTE4524H4201152;

    xi.    Two diamond hoop earrings;

    xii.    Toyota 4Runner, VIN: JTEBU5JR8J5609828;

      xiii.    2008 Dodge Ram 2500, VIN: 3D7KS28A28G133447; and

      xiv.    2014 Sundown Rancher trailer, VIN: 13SKJ2828F1KA9730.

  c. Firearms

      ii.    The U.S. seized a large number of firearms from Defendant's properties on June 26, 2019 as well. The U.S. has not sought forfeiture of these firearms but, the firearms are still part of the Defendant's bankruptcy estate.

II.    <u>Coordination Agreement Framework</u>

The Parties submit a proposed framework for:

(1) Resolution of competing claims of jurisdiction over the Subject Assets in multiple proceedings, that is the Criminal Action, Case No. 5:19-247 the Southern District of West Virginia (the "Criminal Forfeiture"), the Civil Forfeiture Action No. 5:19-00537 in the Southern District of West Virginia (the "Civil Forfeiture") and the Bankruptcy Court for the Southern District of West Virginia (Bankruptcy Cases No. 19-50122, 19-50192, and 19-50193) (the "Bankruptcy Cases"). Under the terms of the Agreement, the Trustee will proceed with a sale of the Real Property at contract prices agreed between the U.S. and the Trustee. The Government will proceed with the liquidation of the Personal Property.

(2) Removal of a possible cloud on title to Real Property in the wake of a contested sale of the Real Property, avoiding the necessity of costly and time-consuming litigation to resolve title issues on the Real Property and to enable the conveyance of clear title.

(3) Under the terms of the Agreement, distributions by the Trustee to the claimants shall be sent to the US Attorney's Office, who then deliver such distributions to claimants.

(4) At closing of Real Property, Trustee shall pay or cause to paid, the first deed of trust on the Real Property, HOA dues through the date of closing, customary closing costs

(including real estate taxes through the date of closing, settlement and closing fee), Grantor's Tax/ a realtor commission not to exceed 6%, reimbursement to our broker for all property maintenance and repairs, including utility bills, lawn maintenance expenses.

(5) The Trustee shall retain the balance of the sale proceeds of Real pending liquidating of trustee compensation under 11 U.S.C. § 326(a) and reasonable interim professional compensation associated with the sale of the Real Property. The Trustee and his counsel shall promptly file interim applications for compensation. The Government shall not object to allowance and payment of such approved fees, commission and compensation from the balance of the sale proceeds either as interim or final compensation, provided however, that the Government may object to interim applications for compensation to the extent the same seek fees unrelated to the sale of the Real Property.

(6) The Government shall dispose of Personal Property through its established forfeiture proceedings and provide an accounting of the sale to the Trustee.

(7) Victims of the Debtors' fraudulent actions shall be considered claimants to the sale proceeds of the Real and Personal property and shall priority over general unsecured creditors. The Trustee shall treat the victims as a separate class of unsecured creditors and that class shall have a priority over general unsecured creditors.

(8) Victims that have notified the U.S. Attorney's Office of a claim shall also be considered claimants in the pending bankruptcy case. Payments made to the victims by the Trustee and/or the U.S. Attorney's Office shall be considered distributions on the claims both in the bankruptcy case and any forfeiture proceeding.

More specifically, in support of the Agreement, the Parties submit the following background, findings, and conclusions for consideration and approval by the District Court and

5

Bankruptcy Court.

WHEREAS, on June 26, 2019 through June 28, 2019, the United States of America seized the following assets from the defendant, Natalie Cochran (the "Defendant") pursuant to various search and seizure warrants signed by United States Magistrate Judge Dwane L. Tinsley. The seized assets (the "Personal Property")) included:

a. $44,935.01 check for all funds within the First Community Bank account ending in 6739 held in the name of Tactical Solutions Group LLC;

b. 1965 Shelby Cobra Replica, VIN: AE9BMAAH8H1MT1098;

c. 2017 Yamaha Motorcycle, VIN: 9C6CE22Y5H00;

d. 2014 Big TEX Dump Trailer, VIN: 16VDX122XE5068547;

e. 2017 Yamaha Motorcycle TTR230H, VIN: 9C6CG28Y0H0016654;

f. 2018 Polaris Model 218VFE92BU, VIN: 3NSVFE92XJF410893;

g. 6x14 AFG BigT trailer, VIN: 5JTAU1419DA044992;

h. Yamaha Timberwolf ATV, VIN: 810E-096235;

i. 2017 Honda Rubicon ATV, VIN: 1HFTE4524H4201152;

j. Two diamond hoop earrings;

k. Toyota 4Runner, VIN: JTEBU5JR8J5609828;

l. 2008 Dodge Ram 2500, VIN: 3D7KS28A28G133447;

m. 2014 Sundown Rancher trailer, VIN: 13SKJ2828F1KA9730; and

n. Various firearms and ammunition seized by law enforcement (collectively, the "Firearms").

WHEREAS, on July 23, 2019, the U.S. filed a Civil Forfeiture Complaint in the Southern District of West Virginia, Case No. 5:19-cv-00537, against three of the Defendant's pieces of real property (collectively referred to as the "Real Property"), which are listed below:

a. Real Property Situated at 433 4-H Lake Drive, Daniels, Raleigh County, West Virginia together with all improvements, fixtures and appurtenances thereon, and all leases, rents and profits derived therefrom;

b. Real Property Situated at 219 N. Eisenhower Drive, Beckley, Raleigh County, West Virginia together with all improvements, fixtures, and appurtenances thereon, and all leases, rents, and profits derived therefrom; and

c. Real Property Situated at 210 Parkwood Drive, Beckley, Raleigh County, West Virginia together with all improvements, fixtures, and appurtenances thereon, and all leases, rents, and profits derived therefrom;

WHEREAS, on July 24, 2019, the U.S. also obtained a Protective Order which prevented the Defendant from entering any agreement to sell, assign pledge, distribute, give away or otherwise encumber the Real Property;

WHEREAS, on July 24, 2019, Natalie Cochran filed for Chapter 7 Bankruptcy Protection the United States Bankruptcy Court for the Southern District of West Virginia, and on July 25, 2019, Arthur M. Standish was appointed as Chapter 7 Trustee, but later resigned and Robert L. Johns (the "Trustee') was appointed as Trustee;

WHEREAS, on September 9, 2019, a 341 Meeting of Creditors was held and as a result of that meeting, the Trustee sent out Notice of Assets to creditor and interested parties;

WHEREAS, on September 24, 2019, Defendant moved to stay the civil forfeiture proceedings against the Real Property. The civil forfeiture proceeding are still stayed;

WHEREAS, on September 25, 2019, a twenty-six (26) count federal indictment was returned against the Defendant;

WHEREAS, on November 14, 2019, the Trustee caused Tactical Solutions Group, LLC and Technology Management Solutions, LLC, wholly owned West Virginia limited liability companies, to file for bankruptcy;

WHEREAS, on September 21, 2020, the Defendant entered into a guilty plea on counts six (6) and eighteen (18) of the federal indictment. Through Defendant's plea agreement she agreed to forfeit her interest in the Subject Assets;

WHEREAS, on November 18, 2020, Defendant filed an agreement to waive any discharge of debts and obligations afforded her under the bankruptcy code;

WHEREAS, on December 3, 2020, this Court entered a Preliminary Order of Forfeiture forfeiting the Defendant's interest in the Subject Assets (as well as in a $1,000,000 money judgment);

WHEREAS, on March 30, 2021, the Defendant was sentenced by this Court;

WHERAS, on April 30, 2021, the Defendant filed an appeal of her sentenced with the Fourth Circuit Court of Appeals;

WHEREAS, on October 8, 2021, the Fourth Circuit Court of Appeals dismissed the Defendant's appeal;

WHEREAS, the U.S. and the Trustee seek to maximize recovery to victims and creditors and minimize expenses through the coordination of their respective efforts for the victims and creditors;

WHEREAS, there are significant overlap of identity between the Defendant's victims and creditors of the Defendant's bankruptcy estate, and competing litigation would result in the overall

diminishment of the recovery for victims and creditors alike and undue delay in the distribution of assets;

WHEREAS, the U.S. seized the Firearms during the searches of the Real Property. The U.S. has not sought to forfeit the Firearms; however, the Firearms are still property of the Defendant's bankruptcy estate. Other third parties have asserted ownership claims regarding several of the Firearms. The U.S. and Trustee will work together to verify the third-parties ownership claims and return the Firearms to the appropriate third-party owners if necessary. The U.S. will then work with the Trustee to facilitate the transfer of the remaining Firearms to the Trustee to liquidate. The U.S. and the Trustee agree that the Trustee will employ a licensed federal firearms dealer to liquidate any of the remaining Firearms. The Trustee will then distribute the proceeds generated from the sale of the Firearms to the claimants in the bankruptcy estate.

WHEREAS, the Parties have entered into this Agreement and propose this Agreement to the Bankruptcy Court and District Court in order to set forth and obtain approval of a framework for liquidation of the Real Property and the Firearms by the Trustee and substitution of a cash payment to the United States from the sale of the property for the res in the Criminal Forfeiture and Civil Forfeiture;

WHEREAS, in order to resolve any potential claims by the Trustee to the Subject Assets if it was to be forfeited in the Criminal Forfeiture or Civil Forfeiture and to expedite liquidation of the Subject Assets and to avoid the risks of litigating these competing claims, the Parties enter into the following stipulations and request that the District Court sign and enter this Agreement in the Criminal Forfeiture and Civil Forfeiture and that the Bankruptcy Court sign and enter this Agreement in the Bankruptcy Cases. The Parties agree that, if either the Bankruptcy Court or the

9

District Court does not enter this Agreement, the terms of this Coordination Agreement shall not be effective.

THEREFORE, U.S. and the Trustee, agree as follows:

1. The Parties agree that the Real Property constitute or is derived from fraud proceeds or otherwise could be ordered forfeited as proceeds of fraud under 18 U.S.C. §§ 981, 982 and as property involved in money laundering under 18 U.S.C. §§ 981, 982 in the Criminal Forfeiture or Civil Forfeiture.

2. The Government agrees that the Trustee is better positioned than the Government, at this point, to liquidate the Real Property under Title 11.

3. The Parties and the Trustee agree that liquidation can best be achieved by (1) the Trustee selling the Real Property pursuant to 11 U.S.C. § 362, which includes disbursement of costs and expenses and distributions by the Trustee to the claimants shall be sent to the US Attorney's Office, who then deliver such distributions to claimants, so long as it receives payment, agrees to the sale of the Real Property under Bankruptcy procedures. Victims that have notified the U.S. Attorney's Office of a claim shall also be considered claimants in the pending bankruptcy case. Payments made to the victims by the Trustee and/or the U.S. Attorney's Office shall be considered distributions on the claims both in the bankruptcy case and any forfeiture proceedings. The United States will not oppose the sale of the Real Property by the Trustee under reasonable terms.

4. The Government and Trustee agree that the Government shall dispose of Personal Property through its established forfeiture proceedings and provide an accounting of the sale to the Trustee.

5. Victims of the Debtors' fraudulent actions shall be considered claimants to the sale

proceeds of the Subject Assets and shall priority over general, unsecured creditors. The Trustee shall treat the victims as a separate class of unsecured creditors and that class shall have a priority over general, unsecured creditors.

6. Victims that have notified the U.S. Attorney's Office of a claim shall also be considered claimants in the pending bankruptcy case. Payments made to the victims by the Trustee and/or the U.S. Attorney's Office shall be considered distributions on the claims both in the bankruptcy case and any forfeiture proceedings.

7. The Government and the Trustee agree that the Trustee shall dispose of the Firearms through the pending bankruptcy case. Any sale of the Firearms will occur through a licensed federal firearms dealer. The Trustee will distribute the proceeds generated by the sale of the Firearms to the claimants in the pending bankruptcy case and provide an accounting of the sale and distribution to the Government.

8. This Coordination Agreement shall not constitute a waiver of the Department of Justice's, the Secret Service, Department of Treasury, the United States Marshal Service or West Virginia State Police's rights to bring criminal, civil, and/or administrative forfeiture proceedings, the Government's restitution and debt collection laws, or the Government's right to file claims to asserts other than the Real Property in the Bankruptcy Case, nor shall it constitute a waiver by the Trustee of any rights that the Trustee may have to pursue assets, other than the Subject Assets in the Bankruptcy Case.

9. The parties are hereby asserting or assisting others in asserting, any claim against the United States and any and all agents and employees of the United States (including but not limited to the Department of Justice ("DOJ"), the United States Attorney's Office for the Southern District of West Virginia ("USAO-SDWV"), the Secret Service ("USSS"), the

United States Department of Treasury, Treasury Executive Office for Asset Forfeiture ("TEAOF"), and any agents and employees of the United States, DOJ, USAO-SDWV, USSS, and TEOAF) as well as the West Virginia State Police, in connection with or arising out of the seizure, restraint, forfeiture, and/or constructive possession of the Real Property, including, but not limited to, any claim that there was no probable cause to seize the Subject Assets, that the Trustee is a prevailing party, or that the Trustee if entitled to attorney's fees or any award of interest against the United States or the Real Property.

10. Upon approval of the sale by the Bankruptcy Court, with payment to the United States, and notice to the District Court, the District Court will lift any stay of proceeds and substitute the res and the defendant in the Civil Forfeiture and Criminal Forfeitures from the Subject Assets. The victims of the Debtors' fraudulent actions shall be considered claimants to the sale proceeds of the Real Property and Personal Property and shall priority over general, unsecured creditors. The Trustee shall treat the victims as a separate class of unsecured creditors and that class shall have a priority over general, unsecured creditors. The Government will cooperate with the Trustee in connection with the closing of the sale and execute any documents reasonably required by the settlement attorney in order to close the sales.

11. At closing of Real Property, Trustee shall pay or cause to paid, the first deed of trust on the Real Property, HOA dues through the date of closing, customary closing costs (including real estate taxes through the date of closing, settlement and closing fee), Grantor's Tax/ a realtor commission not to exceed 6%, reimbursement to our broker for all property maintenance and repairs, including utility bills, lawn maintenance expenses.

12. As to the sale of Personal Property, the Government shall dispose of Personal Property

through its established forfeiture proceedings and provide an accounting of the sale to the Trustee.

13. As to the sale of the Firearms, the Trustee shall dispose of the Firearms through the bankruptcy proceeds and provide and accounting of the sale to the Government.

14. The Trustee shall retain the balance of the sale proceeds of Real pending liquidating of trustee compensation under 11 U.S.C. § 326(a) and reasonable interim professional compensation associated with the sale of the Real Property. The Trustee and his counsel shall promptly file interim applications for compensation. The Government shall not object to allowance and payment of such approved fees, commission and compensation from the balance of the sale proceeds either as interim or final compensation, provided however, that the Government may object to interim applications for compensation to the extent the same seek fees unrelated to the sale of the Real Property.

15. The Parties agree that the victims of the Debtors' fraudulent actions shall be considered claimants to the sale proceeds of the Real and Personal property and shall priority over general, unsecured creditors. The Trustee shall treat the victims as a separate class of unsecured creditors and that class shall have a priority over general, unsecured creditors.

16. The Parties agree that the sale proceeds described above to be tendered to the United States will be forfeited to the United States pursuant to 18 U.S.C. § 981(a)(1)(A) and 981(a)(1)(C), free and clear of any claims by the Trustee for disposition in accordance with the law. The Trustee agrees to waive further notice of such forfeiture proceeding sand agrees that the forfeiture may, at the option of the United States, be completed through civil or criminal forfeiture proceedings.

17. The Parties shall bear their own costs and attorney's fees, except as otherwise provided herein on fee costs and expenses approved by the Bankruptcy Court consistent with Paragraph 8 above.

18. This Coordination may be executed in counterparts, each of which shall be deemed an original, and all of which, when taken together, shall be deemed the complete Coordination Agreement. Fax or PDF copies shall be treated as originals.

19. The Parties hereby waive all rights to appeal or to otherwise challenge or contest the validity of this Coordination Agreement.

20. This Coordination Agreement does not constitute, is in no way intended to be, and should not be construed as an admission of the viability or fallibility of any claim or interest, or a concession about the merit of any claims, on the part of any party, including the United States, its agents, servants, or employees, and all parties for the superiority of any other party's claims. This Agreement is entered by all parties for the purpose of comprising disputed claims and avoiding the expenses and risks of further litigation.

21. The United States does not warrant title on the Real Property, Personal Property or Firearms and shall not be liable to any person or entity because of any other liens on, or encumbrances to, the Real Property, Personal Property or Firearms.

22. The Bankruptcy Court and District Court shall have jurisdiction over the interpretation and enforcement of this Coordination Agreement under applicable federal law in each of their respective matters.

23. This Agreement constitutes the complete agreement between the Parties and may not be amended except by signed, written consent and written addendum, of the Parties.

14

23. This Agreement constitutes the complete agreement between the Parties and may not be amended except by signed, written consent and written addendum, of the Parties.

24. The Parties acknowledge that the preparation of this Agreement was collaborative in nature, and so agree that any presumption or rule that an agreement is construed against its drafted shall not apply to the interpretation of this Agreement or any term or provision hereof.

25. Notwithstanding the possible applicability of the Bankruptcy Rules and subject to the provisions above, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

AGREED AND CONSENTED TO:

UNITED STATES ATTORNEY
WILLIAM S. THOMPSON

**KATHLEEN E. ROBESON**
U.S. ATTORNEY'S OFFICE
VA Bar No. 89526
300 Virginia Street, East
Room 4000
Charleston, WV 25301
Phone No: (304) 345-2200
Fax No: (304) 347-5104
Email: Kathleen.robeson@usdoj.gov
*Assistant United States Attorney*
CHAPTER 7 TRUSTEE
ROBERT S. JOHNS

**BRIAN R. BLICKENSTAFF, ESQ.**
[WVSB No. 9449]
TURNER & JOHNS, PLLC
808 Greenbrier Street
Charleston, WV 25311
Phone No: (304) 720-2300
Fax No: (304) 720-2311
E-mail: bblickenstaff@turnerjohns.com
*Counsel for Robert L. Johns, Chapter 7 Trustee*